UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| COPPERHEAD AGRICULTURAL PRODUCTS, LLC, a South Dakota Limited Liability Company, and COPPERHEAD CONCLAVE LLC, a South Dakota Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>KB AG CORPORATION, LLC, KIMBER MITCHELL, and BRIAN ROBERTSON,<br><br>Defendants. | CIV. 18-4127<br><br>**MEMORDANDUM OPINION AND ORDER DENYING KB AG'S MOTION TO DISMISS FOR IMPROPER VENUE AND MOTION TO TRANSFER VENUE AND GRANTING PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY** |

## INTRODUCTION

Pending before the Court are several motions that have been filed by the parties in this case. Defendant, KB Ag Corporation ("KB Ag"), has moved to dismiss Plaintiffs' complaint ("Complaint") for improper venue, lack of personal jurisdiction, and for failure to state a claim pursuant to Federal Rules of Civil Procedure, 12(b)(3), 12(b)(2), and 12(b)(6), respectively. Docs. 14, 18.[1] Alternative to dismissal, KB Ag moves for an order transferring the case to the Eastern District of Texas pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a). Docs. 14, 18. The two named individual defendants, Kimber Mitchell ("Mitchell") and Brian Robertson ("Robertson"), have not been served in this lawsuit and have thus far allegedly evaded service. *See* Doc. 8 (Plfs.' Memorandum in Support for Order Permitting Substitute Service of Defendants).

Plaintiffs have filed a motion for leave to undertake expedited discovery and to set a hearing for preliminary injunctive relief, Doc. 23, and a motion for preliminary injunctive relief and declaratory relief, Doc. 26.

The Court's Order addresses KB Ag's motion to dismiss for improper venue pursuant to Rule 12(b)(3) and § 1406(a) and motion to transfer venue pursuant to § 1404(a), Docs. 14, 18, as well as Plaintiffs' motion for expedited discovery, Doc. 23.

---

[1] On January 17, 2019, KB Ag filed its initial motion to dismiss, Doc. 14, and on January 23, 2019, KB Ag filed its amended and corrected motion to dismiss, Doc. 18.

1

# FACTS

Don Estes spent his career working in the agricultural industry and designing products that would help farmers. Don Estes Decl. ¶ 1. From March 1, 1960 until 2003, Don Estes owned a business named Estes Manufacturing in Flanagan, Illinois. Don Estes Decl. ¶ 2.

Don Estes is the inventor of certain technology incorporated into the RPR Concave product that attaches to combines and is the owner of patent rights pertaining to that technology, including: (1) US 8,454,416 B1; (2) US 8,690,652 B1; and (3) US RE46,401 E. Don Estes Decl. ¶ 3; Compl. ¶¶ 10, 14. The RPR Concave was marketed and sold by a company in Frankfort, Indiana, named CM Welding, Inc. ("CM Welding"), owned by Carolyn Estes. Don Estes Decl. ¶¶ 4-5, Ex. A; Mitchell Decl. ¶ 6. The RPR Concaves that Don Estes developed were known by many in the industry as "Estes RPR Concaves" or "Estes Performance Concaves." Don Estes Decl. ¶ 9, Exs. C, D, E, F. CM Welding routinely used Don Estes's last name in its advertisements to sell the RPR Concaves. Don Estes Decl. ¶ 4, Ex. F; Hagan Aff., Ex. L. Don Estes authorized CM Welding to use his name on its website and Facebook pages because he was married to owner, Carolyn Estes. Don Estes Decl. ¶ 5, Ex. F; Hagan Aff., Ex. L. Don and Carolyn Estes are currently in divorce proceedings. Mitchell Decl. ¶ 6.

Don Estes communicated with customers and potential customers about CM Welding products and services and was interviewed by multiple media outlets to promote CM Welding products. Don Estes Decl. ¶¶ 7-8, Exs. A, B. Defendants Mitchell and Robertson were also involved in the sale and marketing of RPR Concaves and would appear at trade shows, in media and video reports, and other events on behalf of the CM Welding. Don Estes Decl. ¶ 10. Carolyn Estes is Mitchell's grandmother and guardian and Mitchell is engaged to Robertson. Mitchell Decl. ¶¶ 7,8.

By at least August 2017, CM Welding was marketing its RPR Concaves as "Estes Performance Concaves." Hagan Aff., Ex. L. In August 2017, "Estes Performance Concaves" encouraged attendees at DakotaFest, held over two days in Mitchell, South Dakota, to "see us in the Ag Tent – Booth 3304." Hagan Aff., Ex. L. In mid-September 2017, Don Estes appeared with Mitchell and Robertson in a publicity session with American Farmer to discuss "Estes Performance Concaves." Don Estes Decl. ¶ 11, Ex. F.

In late October 2017, Don Estes left Indiana to spend time in Florida during the cold season and returned to Indiana in early 2018. Don Estes Decl. ¶ 12. In March 2018, a customer in

Perryville, Missouri ("the Customer"), who had purchased a RPR Concave in late 2017, decided to purchase another RPR Concave. Gremaud Decl. ¶¶ 3-4. The Customer called Estes Performance Concaves utilizing the information packets that were sent with the first RPR Concave that he purchased and believed that he was purchasing the same RPR Concave he already owned and that incorporated Don Estes's patented technology. Gremaud Decl. ¶ 5. The Customer discovered that the concave product that he had been sold was not the same as the RPR Concave that he had purchased earlier. Gremaud Decl. ¶ 10. The company referenced on the invoice enclosed with the concave product the Customer received was KB Ag. Gremaud Decl. ¶ 11.

The Customer called Don Estes's personal number to explain the situation. Gremaud Decl. ¶ 15. The Customer indicated that Don Estes was "dumbfounded" that the Customer's efforts to purchase another RPR Concave through channels he had used previously resulted in the purchase of an entirely different concave product and Don Estes went to Missouri to assess the situation. Gremaud Decl. ¶¶ 16-17. Don Estes provided the Customer with a new RPR Concave and indicated that he would return the other concave, which the Customer later learned was an XPR concave manufactured by KB Ag. Gremaud Decl. ¶ 18.

The Customer did not believe that at the time that KB Ag sent shipped its XPR concave to him that the product had been field-tested and believes the XPR concave to be an inferior product. Gremaud Decl. ¶¶ 20-21. The XPR concave was returned to KB Ag and KB Ag refunded the customer only $3,400 of the $5,100 purchase price that the Customer paid to KB Ag. Gremaud Decl. ¶ 23.

Through the Customer and other dissatisfied customers, Don Estes learned that Mitchell and Robertson had set up a separate company, KB Ag, and had begun to manufacture and sell a separate concave product, the XPR concave. Don Estes Decl. ¶ 17. Don Estes did not design and has not endorsed the XPR concave which is marketed by KB Ag under the "Estes Performance Concaves" tradename. Don Estes Decl. ¶ 17; Mitchell Decl. ¶¶ 3, 9. The trademark "Estes Concave" was registered in Robertson's name on May 29, 2018. Mitchell Decl. ¶ 10; Weinstein Aff., Ex. 6. The trademark "Estes Performance Concaves" was filed in Robertson's name on March 13, 2018, but has not yet been registered. Weinstein Aff. 4, Ex. 7. Defendants have also filed a trademark application with the U.S. Patent and Trademark Office, seeking to register "RPR" as a mark. Compl. ¶ 30.

3

KB Ag was organized and registered in Texas on September 5, 2017. Mitchell Decl. ¶ 8. KB Ag's principal place of business is in Frisco, Texas. Mitchell Decl. ¶ 3. Its concave product is made in Texas. Mitchell Decl. ¶ 3. KB Ag receives orders for its concave product on the phone and the internet and the product is shipped directly to the customer as directed by the customer. Mitchell Decl. ¶ 3.

Don Estes authorized CM Welding to use his name solely for purposes of selling RPR Concaves which incorporated his patented technology. Don Estes Decl. ¶ 21. Don Estes did not authorize Mitchell and Robertson to use the "Estes" name to help sell products sold by KB Ag or for any other purpose and Don Estes has not been offered compensation for the use of the "Estes" name to promote KB Ag's concave product. Don Estes Decl. ¶¶ 20-21. Don Estes has repeatedly communicated with Mitchell and Robertson that he objects to the use of the "Estes" name to market and sell KB Ag's concaves. Don Estes Decl. ¶ 22.

Carolyn Estes, Mitchell's grandmother and guardian, owner of CM Welding, and director of KB Ag, consents to KB Ag's use of the "Estes" name to market its products. Mitchell Decl. ¶ 10.

In May 2018, Don Estes contacted Mr. Jass of Copperhead Agricultural Products ("Copperhead") to determine whether Copperhead had any interest in purchasing CM Welding. Don Estes Decl. ¶ 23. Don Estes provided Copperhead with information relating to CM Welding's financial position and other due diligence information and Don Estes states that this was done with Carolyn Estes's knowledge. Don Estes Decl. ¶ 25. Ultimately, Copperhead did not make a formal offer to purchase CM Welding. Don Estes Decl. ¶¶ 25-26.

At some point in the summer of 2018, Don Estes learned that Carolyn Estes held a position with KB Ag, but was not clear on her specific involvement. Don Estes Decl. ¶ 28.

By mid-July 2018, CM Welding was in arrears with Durre Bros. Welding & Machine Shop, Inc., its exclusive manufacturer, for certain inventory it had ordered. Hagan Aff., Ex. C; Don Estes Decl. ¶ 14. Rather than pay for the inventory, CM Welding proposed that Copperhead satisfy its debt and receive the inventory directly from Durre Bros. Don Estes Decl. ¶ 30; Hagan Aff., Ex. C. On July 16, 2018, Carolyn Estes authorized Durre Bros. to release the inventory in its possession to Copperhead. Hagan Aff., Ex. B.

In late July 2018, Don Estes entered into an exclusive license agreement ("the License Agreement"), with another Copperhead company, Copperhead Concave Systems, LLC,

4

("Copperhead Concave") to license among other things, Don Estes's patents and related "technology, know-how, designs, development, prototypes, and information related to the threshing of crops, instrumentation, packaging, and literature." Hagan Aff., Ex. D. Pursuant to the License Agreement, Don Estes granted Copperhead Concave the exclusive right to "make, have made, use, sell, offer for sale, distribute, develop, and create derivative works, improvements, and derivations" from and to any "licensed products." Hagan Aff., Ex. D. "Licensed product" is defined in the License Agreement as "any product covered by or produced using information, know how, or concepts contained within or based upon" the patents owned by Don Estes and includes "further development of the licensed product, any packaging, and any products previously sold by or on behalf of the Seller utilizing the information or concepts contained directly or indirectly within [Don Estes's patents]." Hagan Aff., Ex. D. Don Estes also granted Copperhead Concave the exclusive right and license to use the "licensed marks" in connection with "any making, use, sale, offer for sale, and distribution of any licensed products." Hagan Aff., Ex. D. Licensed marks is defined as "any of the marks of [licensor, Don Estes] under which Don Estes offered or sold any [licensed product] prior to the [e]ffective [d]ate" of the License Agreement. Hagan Aff., Ex. D.

Concurrent with the execution of the License Agreement, Don Estes entered into an exclusive distribution agreement ("the Distribution Agreement") with Copperhead Concave to distribute "any equipment or devices manufactured for sale using any [of Don Estes's patents,]... packaging, and literature related thereto, and any modifications, improvements, and new generations thereof or thereto." Hagan Aff., Ex. E. Don Estes also granted Copperhead Concave the exclusive right and license to use product marks in connection with the distribution of subject products "including, without limitation, the marks 'RPR CONCLAVE (sic) PATENTS' including any marks previously used relative to the [subject products] except those [marks] over which [Don Estes" has no control." Hagan Aff., Ex. E.

Don Estes believes that Carolyn Estes understood that Copperhead Concave would sell the RPR Concaves under the Copperhead name and would market the product by referencing Don Estes's name and his patented technology. Don Estes Aff., ¶ 31.

On July 26, 2018, the annual Ag PhD Field Day event was held in Baltic, South Dakota and was attended by over 10,000 people with ties to the agricultural community. Hagen Aff., Ex. H. KB Ag, marketing itself as Estes Performance Concaves, was one of the approximately 28

listed sponsors of Ag PhD Field Day and "Estes Performance Concaves" was listed prominently as a sponsor on the marketing materials involving Ag PhD Field Day. Hagan Aff., Ex. H. It was there, that "Estes Performance Concaves" officially "unveiled" its "new XPR Concaves" and urged attendees to stop by its booth. Hagan Aff., Ex. I.

On July 29, 2018, Carolyn Estes emailed Mr. Jass at Copperhead with CM Welding's inventory and requested that Copperhead "arrange for pick up as soon as possible." Hagan Aff., Ex. F. Copperhead paid $69,932.26 for the inventory and the inventory was shipped to South Dakota in mid-August. Hagan Aff., Ex. G. CM Welding claims that Copperhead still has a balance due in the amount of $6,716.41 on this order. Hagan Aff. Ex., G.

In August 21-23, 2018, Plaintiffs attended DakotaFest Farm Show in Mitchell, South Dakota, which featured agricultural events and activities. Compl. ¶ 37. During the DakotaFest Farm Show, Defendants approached the Copperhead booth and allegedly "began loudly making defamatory statements about Copperhead, its product line, and the ownership group's affiliations with Don Estes." Compl. ¶ 38. Plaintiffs allege that Mitchell was visibly upset and creating a scene and that Mitchell's statements could be heard and understood by individual attendees of DakotaFest in and around Plaintiffs' booth. Compl. ¶¶ 39-40. Plaintiffs allege that its personnel asked Mitchell to leave repeatedly and that as she left, she continued to make disparaging, defamatory statements about Plaintiffs' product that were false and disparaging. Compl. ¶ 41.

**PROCEDURAL BACKGROUND**

On October 11, 2008, CM Welding filed an amended complaint against Don Estes, Copperhead, and Copperhead Concave, and other individuals and entities in Clinton County, Indiana. Weinstein Aff., Ex. 5. Therein, CM Welding alleges claims against the defendants for breach of fiduciary duty of loyalty, misappropriation of trade secrets, conversion, fraud and constructive fraud, deception, unjust enrichment, action on account, computer trespass and offense against intellectual property, and replevin. Weinstein Aff., Ex. 5. CM Welding also seeks a declaratory judgment that Taylor IP, as the attorney for CM Welding, and Don Estes breached their fiduciary duties with the unauthorized disclosure, assignment and license of certain intellectual property and patents belonging to CM Welding. Weinstein Aff., Ex. 5. In addition, CM Welding seeks a declaratory judgment that it owns the common law rights in the trademark "RPR Concaves." Weinstein Aff., Ex. 5.

On September 27, 2018, Plaintiffs filed a Complaint in the Southern Division of the District of South Dakota against KB Ag, Mitchell, and Robertson. Doc. 1. Therein, Plaintiffs allege claims for defamation/trade libel; tortious interference; unfair competition; unjust enrichment; deceptive trade practices; unfair competition and false designation of origin under 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); and cyberpiracy in violation of 15 U.S.C. § 1125(d). Doc. 1. Plaintiffs also seek a declaratory judgment holding that Defendants "have no right, title or interest in the marks or trade names: 'Estes Concave' and 'Estes Performance Concave,' and that any registered mark obtained by Defendants relating to 'RPR' or including the surname 'Estes' is invalid and unenforceable, and that Plaintiffs, pursuant to the Licensing and Distribution Agreement, are the sole beneficiaries of goodwill, value, and market share that derives from or is affiliated with the patented products and their inventor, [] Don Estes." Doc. 1. Plaintiffs also seek the entry of a preliminary and permanent injunction against Defendants enjoining them "from further infringement and misappropriation of the 'Estes Marks' and/or tradenames; further acts of unfair competition, misappropriation, and unjust infringement; further sales, advertising, or attempts to distribute or sell their products by use, invocation, mention to the 'Estes Marks' and/or tradenames." Doc. 1.

On October 23, 2018, Plaintiffs moved for an order permitting substitute service of Defendants in this case. Doc. 5. In support of its motion, Plaintiffs filed affidavits stating that they attempted to serve, on several occasions, defendant Mitchell, individually and as registered agent for KB Ag, as well as Robertson, but were unsuccessful. Doc. 6. The registered address for KB Ag at the time was a Post Office box. Doc. 7. Attempts to serve Defendants at a Kentucky address listed on a trademark application for KB Ag and at a possible address of Mitchell in Frisco, Texas, were also unsuccessful. Docs. 6, 7. The Court denied Plaintiffs' motion for an order permitting substitute service on the basis that the substitute service requested by Plaintiffs was not reasonably calculated to give Defendants notice of this lawsuit. Doc. 9. On January 14, 2019, Plaintiffs filed with the Court a certificate of service issued by the Texas Secretary of State stating that KB Ag was served with a copy of the Complaint and summons in this lawsuit pursuant to Section 5.251 of the Texas Business Organization Code. Doc. 12.

In January 2019, KB Ag moved to dismiss the Complaint for improper venue, lack of personal jurisdiction, and failure to state a claim for relief under Federal Rules of Civil Procedure, 12(b)(3), 12(b)(2), and 12(b)(6), respectively. Docs. 14, 18. Alternative to dismissal, KB Ag

moves for an order transferring the case to the Eastern District of Texas pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a). Docs. 14, 18. Plaintiffs have filed a motion for leave to undertake expedited discovery and to set a hearing for preliminary injunctive relief, Doc. 23, and a motion for preliminary injunctive and declaratory relief, Doc. 26. The Court's Order addresses KB Ag's amended motion to dismiss for improper venue pursuant to Rule 12(b)(3) and § 1406(a) and motion to transfer venue pursuant to § 1406(a) and §1404(a), Docs. 14, 18, as well as Plaintiffs' motion for expedited discovery, Doc. 23. The Court will address Plaintiffs' motion to dismiss for lack of personal jurisdiction and for failure to state a claim pursuant to Rules 12(b)(2) and 12(b)(6) and Plaintiffs' motion to set hearing for preliminary injunction in a separate order.

## ANALYSIS

I. **Venue**

KB Ag moves for dismissal without prejudice of the Complaint for improper venue pursuant to Rule 12(b)(3) and § 1406(a). Alternatively, KB Ag moves for an order transferring this case to the Eastern District of Texas pursuant to § 1406(a) and § 1404(a).

**A. Dismissal for Improper Venue**

Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." Rule 12(b)(3) states that a party may move to dismiss a case for "improper venue." "These provisions therefore authorize dismissal [or transfer, in the case of § 1406(a)] only when venue is 'wrong' or 'improper' in the forum in which it was brought." *Atl. Marine Constr. Co. v. U.S. Dist. Court of W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). The question of whether venue is "wrong" or "improper" is generally governed by 28 U.S.C. § 1391. *Id.* That provision states that "[e]xcept as otherwise provided by law . . . this section *shall* govern the venue of *all civil actions* brought in district courts of the United States." *Id.* (quoting § 1391(a)(1) (emphasis added)). Section 1391 further provides that:

> a civil action may be brought in—(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

8

§ 1391(b). The Supreme Court has stated that "[w]hen venue is challenged, the court must determine whether the case falls within one of the three categories set out in section 1391(b)." *Atlantic Marine Const. Co.*, 571 U.S. at 56. "If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under section 1406(a)." *Id.*

When reviewing a motion to dismiss under Rule 12(b)(3), the Court applies the same standard used for other motions to dismiss. *Transocean Grp. Holdings Pty Ltd. v. S.D. Soybean Processors*, 505 F. Supp. 2d 573, 575 (D. Minn. 2007); *Fitzgibbons v. Hill-Rom Co.*, No. 12-4009, 2012 WL 12548936, at *3 (D.S.D. Jun. 28, 2012) (J. Schrier) (citing *Transocean Grp. Holdings*, 505 F. Supp. 2d at 575)). The Court must construe all facts in the light most favorable to the non-moving party, and take the facts alleged in the complaint as true. *Id.* Unlike motions to dismiss under Rule 12(b)(6), when ruling on a motion to dismiss for improper venue, the court may consider matters outside the pleadings. *Spanier v. Am. Pop Corn Co.*, No. 15-4071, 2016 WL 1465400, at *10 (N.D. Iowa Apr, 14, 2016). The defendant, as the moving party, has the burden of establishing that venue is improper. *United States v. Orshek*, 164 F.2d 741, 742 (8th Cir. 1947).

Defendants contend that the Court should dismiss this case for improper venue pursuant to Rule 12(b)(3) and § 1406(a) because the only activity that is alleged to have taken place in South Dakota is the alleged defamatory statements made by Mitchell at DakotaFest in August of 2018. Defendants argue the more substantial events and occurrences relating to the marketing of KB Ag's concave product took place in Texas or through CM Welding in Indiana. Defs.' Br. 24.

In determining whether venue in the Southern Division of the District of South Dakota is proper, the Court must determine "whether the district the [P]laintiff[s] chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Setco Enters. Corp. v. Robbins*, 19 F.3d 1278, 1281 (8th Cir. 1994). "The inquiry into this substantiality requirement is more of a qualitative than a quantitative nature." *Steen v. Murray*, 919 F. Supp. 2d 993 (S.D. Iowa Jan. 15, 2013) (citing *Cold Spring Harbor Lab. v. Ropes & Gray, L.L.P.*, 762 F. Supp. 2d 543, 553 (E.D.N.Y. Jan. 22, 2011)); *see also Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) ("[I]n determining whether events or omissions are sufficiently substantial to support venue . . ., a court . . . should review 'the entire sequence of events underlying the claim.'") (citing *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001); *First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998)).

The Court concludes that the present venue has a substantial connection to the claims asserted by Plaintiffs in their Complaint. Defendants concede that the incidents giving rise to Plaintiffs' defamation claim occurred at the farm show in Mitchell, South Dakota. Defs.' Br. 24. The majority of Plaintiffs' other claims regard the alleged unlawful and unauthorized misappropriation of the "Estes" name and the use and invocation of the marks/name "Estes Performance Concaves" and "Estes Concaves." The Court finds Defendants' launch of their product "Estes Performance Concaves" and highly visible marketing and promotion of their product at Ag PhD Field Day in Baltic, South Dakota, before more than 10,000 industry participants, together with the alleged defamatory statements made by defendants at the Mitchell, South Dakota, farm show, are sufficient to create a substantial connection between the present venue and Plaintiffs' claims. Accordingly, the Court concludes that venue in the Southern Division of the District of South Dakota is proper and denies Plaintiffs' motion to dismiss or transfer this case to the Easter District of Texas pursuant to Rule 12(b)(3) and § 1406(a).

### B. Transfer pursuant to 28 U.S.C. 1404(a)

KB Ag has moved to transfer this case to the Eastern District of Texas pursuant to § 1404(a). Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

A district court enjoys "broad discretion" when deciding whether to grant a motion to transfer. *Advanced Logistics Consulting*, No. 09-720, 2009 WL 1684428, at *2 (D. Minn. Jun. 16, 2009) (citing *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989)). In considering the convenience of the parties, convenience of the witnesses, and interest of justice, the Court must make a "case-by-case evaluation of the particular circumstances at hand and a consideration of all relevant factors." *Terra Int'l v. Miss. Chem. Corp.*, 119 F.3d 688, 691 (8th Cir. 1997). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Id.* at 695. The court should not transfer an action where it "[m]erely shift[s] the inconvenience from one side to the other." *Id.* at 696-97 (quoting *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992)).

KB Ag states that "[i]t is currently unknown exactly what the witnesses will need to address and how many witnesses will be needed." Doc. 17 at 25. KB Ag urges the Court to

consider the convenience of the unserved defendants in this case, Mitchell and Robertson, in its consideration of its motion to transfer venue.

The Court concludes that KB Ag has not shown, nor do the facts and circumstances demonstrate, that transfer to the Eastern District of Texas is warranted. The convenience of unserved parties is not a factor in this Court's determination whether transfer is appropriate. The pleadings show that many of the possible witnesses live in South Dakota. Events in Baltic, South Dakota, and Mitchell, South Dakota, will play a significant role in the trial of this case. Both Baltic and Mitchell are located in the Southern Division of the District of South Dakota. No good basis has been shown to transfer this case to Texas.

## II.    Motion for Expedited Discovery

Pending before the Court is Plaintiffs' motion for expedited discovery and motion to set hearing for preliminary injunctive relief, Doc. 23. Therein, Plaintiffs note that KB Ag has moved for dismissal under Rule 12(b)(2) for lack of personal jurisdiction, based solely on statements set forth in the Declaration of Kimber Mitchell. Doc. 23. Plaintiffs seek leave to undertake expedited discovery on a limited basis by permitting Plaintiffs to serve no more than 10 Interrogatories and no more than fifteen (15) Requests for Production on KB Ag and have filed with the Court a copy of the proposed written discovery. Doc. 23. Plaintiffs also seek leave to notice and take no more than five (5) depositions (including those of defendants Mitchell and Robertson who are the member-managers of KB Ag). Plaintiffs set forth that the proposed discovery addresses matters relating to personal jurisdiction and to issues that are germane to Plaintiffs' substantive claims, for which they seek preliminary injunctive relief.

The Court grants Plaintiffs' motion for expedited discovery in its entirety. The Court finds that "good cause" exists to order the expedited discovery requested by Plaintiffs and that the discovery will assist the Court in determining whether minimum contacts exist and whether preliminary injunctive relief is appropriate. *See Oglala Sioux Tribe v. Van Hunnik*, 298 F.R.D. 453, 455 (D.S.D. 2014) (stating that a pending preliminary injunction is one factor the court may consider in determining whether good cause exists); Fed. R. Civ. P. 26 advisory committee's note to 1993 amendment (expedited discovery is appropriate "in some cases, such as those involving requests for a preliminary injunction or motions challenging personal jurisdiction"). In addition, the Court finds that the discovery request is narrowly tailored to address (i) the dispute over personal jurisdiction and (ii) the appropriateness of the preliminary injunctive relief sought by

Plaintiffs. *See Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 420 (D. Colo. Jan. 2, 2003) (citations omitted) ("In applying the 'good cause' standard under Rule 26(d), the court should consider the scope of the requested discovery."); *In re Websecure, Inc. Securities Litigation*, No. 97-10662, 1997 WL 770414 at *4 (D. Mass Nov. 26, 1997) (finding that expedited discovery was both "particularized" and "necessary to prevent undue prejudice"). Plaintiffs have limited its expedited deposition request to five (5) persons, including Mitchell and Robertson. Doc. 23. The Court further finds that Plaintiffs' request for "all payments, withdrawals, disbursements, dividends, payouts, bonuses, returns of equity or any other benefit that was provided or exchanged between and among Carolyn Estes, Kimber Mitchell, Brian Robertson and KB Ag," does not seek to uncover "extensive information about [KB Ag's] financial health" as argued by Defendants, Doc. 30 at 5. This information is relevant to understanding how and when KB Ag began to operate as a business, when Carolyn Estes, Mitchell and Robertson began their association with KB Ag, and the motivations and state of mind of the Defendants pertaining to some of the claims alleged by Plaintiffs. The Court finds that Plaintiffs' request for information and documentation regarding each product KB Ag has sold, advertised, promoted, or distributed is not as burdensome as argued by KB Ag given Mitchell's declaration stating that KB Ag launched its "first and only product," the XPR Concave just a short time ago in August 2018. Kimber Decl. ¶ 9.

After discovery has been completed, the parties shall file supplemental briefs with accompanying materials relating to the issues of personal jurisdiction and Plaintiffs' motion for preliminary injunctive and declaratory relief. The Court will rule on Defendants' motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction before the Court sets a date for a hearing on Plaintiffs' motion for preliminary injunctive and declaratory relief. The Court will also address Defendants' motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim in a separate order.

IT IS ORDERED that:
1. Defendants' motion to dismiss for improper venue pursuant to Rule 12(b)(3) and § 1406(a), Docs. 14 & 18, is DENIED; and
2. Defendants' motion to transfer venue pursuant to § 1406(a), Docs. 14 & 18, is DENIED; and

3. Defendants' motion to transfer venue pursuant to § 1404(a), Docs. 14 & 18, is DENIED; and
4. Plaintiffs' motion for leave to undertake expedited discovery, Doc. 23, is GRANTED; and
5. After expedited discovery is complete, the parties shall file supplemental briefs and accompanying materials with the Court on the issues of personal jurisdiction and Plaintiffs' request for preliminary injunctive and declaratory relief.

Dated this 14th day of March, 2019.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK