UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| COPPERHEAD AGRICULTURAL PRODUCTS, LLC, A SOUTH DAKOTA LIMITED LIABILITY COMPANY; AND COPPERHEAD CONCAVE LLC, A SOUTH DAKOTA LIMITED LIABILITY COMPANY;<br><br>             Plaintiffs,<br><br>   vs.<br><br>KB AG CORPORATION, LLC, KIMBER MITCHELL, BRIAN ROBERTSON,<br><br>          Defendants. | 4:18-CV-04127-LLP<br><br>**REDACTED**[1]<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL<br><br>DOCKET NO. 43 |

**INTRODUCTION**

This matter is pending before the court on the complaint of Copperhead

Agricultural Products, LLC, and Copperhead Concave LLC, (collectively

"Copperhead"), both South Dakota entities. See Docket No. 1. Copperhead

sues defendants KB Ag Corporation, LLC, and its principals Kimber Mitchell

and Brian Robertson (collectively "KB Ag"), for trademark infringement under

the Lanham Act, 15 U.S.C. § 1125(a) and (d) and various state law claims. Id.

---

[1] The District Court in its opinion at Docket No. 78 redacted references to documents in this case that are sealed. Therefore, portions of this order are redacted to remain consistent with the District Court's practice.

Jurisdiction is premised on the presence of a federal question, 28 U.S.C.

§ 1331; supplemental jurisdiction, 28 U.S.C. § 1367; and diversity jurisdiction,

28 U.S.C. § 1332.  Now pending is Copperhead's motion to compel certain

discovery, Docket No. 43, which the district court, the Honorable Lawrence L.

Piersol, referred to this magistrate judge for determination pursuant to 28

U.S.C. § 636(b)(1)(A).  See Docket No. 47.

## FACTS

The district court recently issued an opinion in this matter setting forth

the facts and procedural history of this case in great detail.  See Docket No. 78

at pp. 1-16.  That description is incorporated herein by reference.  What follows

is a shortened version of facts relevant to this motion.  This action is one of

four pending actions in different venues with overlapping claims, all of which

stem from a personal relationship between Carolyn Estes and Don Estes,

formerly husband and wife, and a product invented by Don.

Carolyn owned CW Welding, an Indiana company.  Don invented the

product known as the RPR Concave, also known variously as Estes RPR

Concaves or Estes Performance Concaves.  Concaves are devices fitted on

combines which do the initial work of separating the grain from the chaff

during harvesting.  See, e.g.

https://www.youtube.com/watch?v+bQrMCh2Gb0M, last checked December

11, 2019.

Don allowed his wife, Carolyn, to use Don's name in advertisements for

the RPR Concaves and Don promoted CM Welding products.  Defendants

herein, Mitchell and Robertson, were also involved in the sale and marketing of RPR Concaves for CM Welding at trade shows, in media and video reports, and other events associated with CM Welding. Carolyn was Mitchell's legal guardian and grandmother. Robertson is Mitchell's fiancé.

Then Carolyn and Don filed for divorce and things became complicated. On August 20, 2018, a civil action was filed in Indiana state court by CM Welding, Inc., against Don, Copperhead, Steven William Greeno, and CSM Corp. <u>See</u> Docket No. 67 at p. 7. █████████████████

████████████████████████████████████████████

███████████████████████████. <u>See</u> Docket No. 59-1 (sealed).

████████████████████████████████████████████

████████████████████████████████████████████.

<u>Id.</u> ███████████████████████████████████

████████████████████████████████████████. <u>Id.</u>

████████████████████████████████████████████

██████████████████████████████. <u>See</u> Docket No. 59-2 (sealed). Counsel for Copperhead represents to the court that the stay in the Indiana state court action has now been lifted.

███████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

███████████████. <u>See</u> Docket No. 59-3 (sealed). █████████████

██████████████████████████. <u>Id.</u> On September 10, 2019, the

USPTO registered the mark "RPR" in association with agricultural harvester machinery. Docket No. 74. The registration is on the Principal Register in favor of CM Welding. Id., Docket No. 74-1. However, the application for the mark "RPR Concaves" remains pending and subject to opposition before the USPTO.[2] Id.

There is also litigation pending in the Southern District of Texas in which claims are made collectively against Don Estes, CSM Corporation and Copperhead Concave Systems, and CM Welding, Inc., seeking to declare Don Estes' patents unenforceable and invalid. Docket No. 63, 63-9.

This action in the District of South Dakota was filed by Copperhead on September 27, 2018. See Docket No. 1. In lieu of an answer to the complaint herein, defendants filed a motion to dismiss under FED. R. CIV. P. 12(b) for failure to state a claim and for lack of personal jurisdiction. See Docket Nos. 14 & 42.[3] Because no answer was filed, the parties were not ordered to hold the Rule 26(f) meeting where deadlines for stages of the litigation and discovery plans are discussed and agreed upon. Had that planning meeting taken place, the parties' agreement would have been incorporated into a Rule 16 scheduling order issued subsequent to the meeting by the district court. Also because the initial planning meeting did not take place, the parties did not exchange the

---

[2] The USPTO suspended action on the application for the mark "RPR Concaves" after that entity learned of the pendency of the Indiana litigation. Docket No. 74.

[3] The motion to dismiss for lack of personal jurisdiction was denied. Docket No. 78. The motion to dismiss for failure to state a claim is still pending. Id.

initial voluntary discovery which parties are required to provide each other under FED. R. CIV. P. 26.

On February 8, 2019, Copperhead filed a motion for permission from the court to conduct expedited discovery for purposes of (1) responding to KB Ag's motion to dismiss for lack of personal jurisdiction and (2) supporting a motion for preliminary injunctive relief which Copperhead also planned to file.[4] See Docket No. 23. Copperhead supplied the district court with a copy of the written discovery requests (interrogatories and requests for production of documents) it proposed serving on defendants. See Docket No. 23-1.

In its brief in support of the motion to conduct discovery, Copperhead explained it wanted to develop information relating to the nature of Carolyn's relationship with defendants and whether Carolyn or CM Welding authorized, assigned or otherwise purported to transfer intellectual property rights to defendants relating to the RPR Concaves. See Docket No. 24 at pp. 6-8.

Copperhead did not inform the district court in its request for expedited discovery that the Indiana state court had stayed discovery in that action some four months earlier in November, 2018, nor was any mention made of the USPTO action or the then-pending motion to stay in that tribunal in favor of the Indiana action. Id. The district court approved the proposed discovery and granted Copperhead permission to conduct expedited discovery as indicated in the proposed document. See Docket No. 33. The court notes that the two purposes proposed by Copperhead for conducting the discovery—to respond to

---

[4] The motion for preliminary and declaratory relief was denied. Docket No. 78.

personal jurisdiction defenses and to support a preliminary injunction motion—are now moot, both of those issues having been decided by the district court.

Copperhead served defendants with its written discovery requests. Defendants provided some documents, but not all, and not all electronic documents were provided in the format desired by Copperhead. This motion to compel ensued. The parties engaged in good faith efforts to resolve their differences before Copperhead filed the instant motion. Their unresolved disputes are described in more detail below.

A motion to stay was filed by defendants after Copperhead filed the instant motion to compel. Accordingly, this court held the motion to compel in abeyance pending the district court's ruling on the motion to stay. After the district court denied the motion to stay, this court requested counsel for Copperhead to provide the court with an "executive summary" of the discovery disputes still extant. Prior to doing so, the parties' counsels met again on November 11, 2019, to attempt to resolve their dispute. The court was informed that no issues were resolved at that conference. Accordingly, the court requested that the previously-asked-for executive summary be filed. It was, and defendants responded to the same. Those informal responses are filed herewith as an appendix to this opinion.

**DISCUSSION**

**A.     Scope of Discovery**

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> Unless otherwise limited by court order, the scope of discovery is
> as follows:  Parties may obtain discovery regarding any
> nonprivileged matter that is relevant to any party's claim or
> defense and proportional to the needs of the case, considering the
> importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the
> parties' resources, the importance of the discovery in resolving the
> issues, and whether the burden or expense of the proposed
> discovery outweighs its likely benefit.  Information within the scope
> of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).  Rule 26 contains specific limitations relative to

electronic discovery and other objections to providing discovery:

> (B)     *Specific Limitations on Electronically Stored Information.*  A
> party need not provide discovery of electronically stored
> information from sources that the party identifies as not
> reasonably accessible because of undue burden or cost.  On
> motion to compel discovery or for a protective order, the
> party from whom discovery is sought must show that the
> information is not reasonably accessible because of undue
> burden or cost.  If that showing is made, the court may
> nonetheless order discovery from such sources if the
> requesting party shows good cause, considering the
> limitations of Rule 26(b)(2)(C).  The court may specify the
> conditions for the discovery.
>
> (C)     *When Required.*  On motion or on its own, the court must
> limit the frequency or extent of discovery otherwise allowed
> by these rules or by local rule if it determines that:
>
> > (i)     the discovery sought is unreasonably cumulative or
> > duplicative, or can be obtained from some other source
> > that is more convenient, less burdensome, or less
> > expensive;
> >
> > (ii)     the party seeking discovery has had ample opportunity to
> > obtain the information by discovery in the action; or

      (iii)    the proposed discovery is outside the scope permitted by Rule 26(b)(1).

See FED. R. CIV. P. 26(b)(2)(B) and (C). A party claiming a privilege as to requested discovery has the burden of proving the basis for the application of the privilege:

> When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
>
> (i)    expressly make the claim; and
>
> (ii)   describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See FED. R. CIV. P. 26(b)(5)(A). If a party fails to respond to a proper request for discovery, or if an evasive or incomplete response is made, the party requesting the discovery is entitled to move for a motion compelling disclosure after having made a good faith effort to resolve the dispute by conferring first with the other party. See FED. R. CIV. P. 37(a).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between

discoverability and admissibility of evidence. FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2). Therefore, the rules of evidence assume the task of keeping out incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

The advisory committee's note to the 2000 amendments to Rule 26(b)(1) provide guidance on how courts should define the scope of discovery in a particular case:

> Under the amended provisions, if there is an objection that discovery goes beyond material relevant to the parties' claims or defenses, the court would become involved to determine whether the discovery is relevant to the claims or defenses and, if not, whether good cause exists for authorizing it so long as it is relevant to the subject matter of the action. The good-cause standard warranting broader discovery is meant to be flexible.
>
> The Committee intends that the parties and the court focus on the actual claims and defenses involved in the action. The dividing line between information relevant to the claims and defenses and that relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. ... In each case, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.
>
> The rule change signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings. ... When judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action. The court may permit broader discovery in a particular case depending on the circumstances of the case, the nature of the claims and defenses, and the scope of the discovery requested.

See FED. R. CIV. P. 26(b)(1) advisory committee's note.

The same advisory committee's note further clarifies that information is discoverable only if it is relevant to the claims or defenses of the case or, upon a showing of good cause, to the subject matter of the case. Id. "Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy ... encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" E.E.O.C. v. Woodmen of the World Life Ins. Society, 2007 WL 1217919 at *1 (D. Neb. Mar. 15, 2007) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." Id. (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Id. (citing Cervantes v. Time, Inc., 464 F.2d 986, 994 (8th Cir. 1972)).

Discoverable information itself need not be admissible at trial; rather, "discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence." See FED. R. CIV. P. 26(b)(1) advisory committee's note. Additionally, Rule 26(b)(2) requires the court to limit discovery if it determines, for example, that the discovery sought is unreasonably cumulative or duplicative or that "the burden or expense of the

proposed discovery outweighs its likely benefit..." See FED. R. CIV. P. 26(b)(2)(C); see also Roberts v. Shawnee Mission Ford, Inc., 352 F.3d 358, 361 (8th Cir. 2003) ("The rule vests the district court with discretion to limit discovery if it determines, inter alia, the burden or expense of the proposed discovery outweighs its likely benefit."); Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Caton, 136 F.R.D. 682, 684-85 (D. Kan. 1991) ("All discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.").

Once the requesting party has made a threshold showing of relevance, the burden shifts to the party resisting discovery to show specific facts demonstrating that the discovery is not relevant, or how it is overly broad, burdensome, or oppressive. Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden--that party must make a specific showing of reasons *why* the relevant discovery should not be had. Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Several courts have determined that where the discovery requests are relevant, the fact that answering them will be burdensome and expensive is not in itself a reason for a court's refusing to order discovery which is otherwise appropriate. <u>See</u> <u>In re Folding Carton Antitrust Litigation</u>, 83 F.R.D. 260, 265 (N.D. Ill. 1979) (stating that "[b]ecause the interrogatories themselves are relevant, the fact that answers to them will be burdensome and expensive 'is not in itself a reason for refusing to order discovery which is otherwise appropriate' "); <u>Alexander v. Parsons</u>, 75 F.R.D. 536, 539 (W.D. Mich. 1977) (stating that "the mere fact discovery is burdensome . . . is not a sufficient objection to such discovery, providing the information sought is relevant or may lead to the discovery of admissible evidence"); and <u>Burns</u>, 164 F.R.D. at 593 (determining that the fact that answering interrogatories will require the objecting party to expend considerable time, effort, and expense consulting, reviewing, and analyzing huge volumes of documents and information is an insufficient basis for an objection). Moreover, if discovery requests are relevant, the fact that they involve work, which may be time consuming, is not sufficient to render them objectionable. <u>See</u> <u>United States v. Nysco Labs., Inc.</u>, 26 F.R.D. 159, 161-62 (E.D.N.Y. 1960) and <u>Rogers v. Tri-State Materials Corp.</u>, 51 F.R.D. 234, 245 (N.D. W. Va. 1970) (stating that "[i]nterrogatories, otherwise relevant, are not objectionable and oppressive simply on grounds [that] they may cause the answering party work, research and expense").

Rule 34 allows one party to serve on another party a request to produce and permit the requesting party to inspect or copy any designated documents

or electronically stored information ("ESI"). FED. R. CIV. P. 34(a)(1)(A).

Objections to requests under Rule 34 must be stated with specificity and must

identify whether there are any documents being withheld pursuant to the

objection. FED. R. CIV. P. 34(b)(2)(B) & (C). Rule 34 also sets forth the manner

for responding to a request for ESI:

> (D) *Responding to a Request for Production of [ESI].* The response
> may state an objection to a requested form for producing [ESI]. If
> the responding party objects to a requested form—or if no form
> was specified in the request—the party must state the form or
> forms it intends to use.
>
> (E) *Producing the Documents or [ESI].* Unless otherwise stipulated
> or ordered by the court, these procedures apply to producing
> documents or electronically stored information:
>
> > (i) A party must produce documents as they are kept in the
> > usual course of business or must organize and label them to
> > correspond to the categories in the request;
> >
> > (ii) If a request does not specify a form for producing [ESI], a
> > party must produce it in a form or forms in which it is
> > ordinarily maintained or in a reasonably usable form or
> > forms; and
> >
> > (iii) A party need not produce the same [ESI] in more than
> > one form.

See FED. R. CIV. P. 34(b)(2)(D) and (E).

The advisory committee notes to the 2006 amendment to Rule 34

indicate that, where a requesting party has specified the form it wishes

production of ESI in, a responding party should not simply produce requested

ESI in a form of the responder's own choice. See FED. R. CIV. P. 34 advisory

committee's note to 2006 amendment. Instead, if the responding party objects

to the form the requesting party specified, the responding party must state

*before* producing the ESI that it objects and stating what form the responding party intends to produce the ESI in. Id. Otherwise, the responding party runs the risk it may have to produce ESI twice, once in the form its prefers and a second time in another form mutually agreeable to both parties. Id. The requirement of stating the form of production of ESI ahead of actual production is intended to allow the parties to discuss the form of production and settle on an appropriate form that serves the interests of both parties, thus saving time and effort. Id.

If the parties cannot agree on a form for producing ESI and a motion to compel ensues, the court is not limited to ordering production in the form specified by either party. Id. The responding party may produce ESI in either its form in which it is ordinarily maintained ("native format"), or in a form that is reasonably usable. Id. The rule does not require production in native format as long as it is produced in a reasonably usable form. Id.

**B.    Mootness**

Defendants suggest that Copperhead's motion to compel is now moot because Copperhead's proffered reasons for obtaining this discovery—to support a preliminary injunction motion and to respond to defendants' motion to dismiss on personal jurisdiction--are now moot, the district court having ruled on its request for preliminary injunctive relief and on defendants' motion to dismiss for lack of personal jurisdiction. The court finds this does not moot the motion to compel. There is nothing in the rules of civil procedure which provide an automatic stay on discovery when a Rule 12(b) motion to dismiss is

pending. Defendants asked for and were refused a stay from the district court. Also, Copperhead sought and obtained the district court's specific permission to engage in this discovery.

Defendants also state that they plan to file an answer within the next 30 days even though their Rule 12(b)(6) motion to dismiss remains pending. Defendants suggest the court delay ruling on Copperhead's motion to compel until after the answer has been filed and after the parties have completed their Rule 26(f) planning meeting. Defendants suggest many of the issues in the motion to compel might be resolved at the Rule 26(f) planning meeting.

The court declines to accept this further "carrot"—the promise of a possible compromise of the dispute. Although it would be desirable and preferable for the parties to work out this dispute themselves, the parties have conferred repeatedly over these issues, including most recently on November 11, 2019.[5] None of those conferences have narrowed or eliminated any of the discovery disputes. If the court accepted defendants' invitation to further delay ruling on Copperhead's motion, the motion would be approaching one year old before it was ruled on. The court already held this motion in abeyance while the district court ruled on the motion for stay, and then again when the parties indicated they wanted to confer on November 11. The court is not confident that further delay will result in any compromise and, at a certain point,

---

[5] The parties conferred after defendants provided initial discovery responses. Then defendants provided supplemental responses. The parties again conferred. Most recently, the parties conferred again on November 11, 2019.

motions need to be decided.  This motion to compel has reached that point.
Accordingly the issues are considered on their merits by the court.

**C.    Production of ESI in Native Format vs. Searchable PDF**

Rule 34 allows the requesting party to specify the format in which it
wishes to receive ESI.  Copperhead served KB Ag with requests for the
production of documents pursuant to Rule 34 that included five and one-half
pages of single-spaced, detailed instructions for producing ESI, including a
"requirement" that even hard copy documents be scanned and rendered into
electronic format.  See Docket No. 23-1 at pp. 5-10.

Copperhead instructs that if documents being produced must be
redacted, KB Ag may produce such ESI in "image format." Id. at p. 6, ¶3.b.[6]
Although Copperhead's definition of "image format" does not include PDF, PDF
is commonly understood to be one of several forms of "image" formats.  *The
Sedona Principles:  Best Practice Recommendations & Principles for Addressing
Electronic Document Production*, Commt. 12b, p. 190 (2d ed. 2007) (hereinafter
"*Sedona Principles*").  Copperhead further instructs that if KB Ag's total ESI
production for the entire case is less than 1,000 files, it may elect to produce
ESI in either native format or image format.  Id.

Copperhead instructs KB Ag to provide all ESI "with accompanying
delimited dat/metadata load files in Concordance format."  See Docket No. 23-

---

[6] There is a typographical error in Copperhead's instructions for producing ESI
that has resulted in two paragraphs labeled "3.b" appearing.  See Docket
No. 23-1 at p. 6.  The court is here referencing the first paragraph labeled "3.b"
at the top of page six, not the second paragraph "3.b" located one-third of the
way down page six.

1 at p. 8, ¶6.a.  Copperhead then lists the specific information it wants to have included in these load files.  Id. at ¶¶6.c, 6.d & 6.e.  Thus, according to the requirements of Rule 34, Copperhead specified the format it wanted KB Ag to produce ESI in.  KB Ag objects to providing the metadata and instead produced ESI in PDF format.  Whether KB Ag chose an appropriate format cannot be determined based on the record before the court—Copperhead's instructions are dependent on how many ESI files will be produced during the course of this litigation.  But it is clear that Copperhead requested metadata in a "load file" for *all* ESI.

The parties' dispute regarding production of ESI in native format or PDF format centers around "metadata"—native format preserves metadata and PDF does not.  Metadata is "data about data."  It is information about a particular electronic file which describes how, when and by whom it was collected, created, accessed, or modified and how it is formatted, including data demographics such as size, location, storage requirements and media information.  *Sedona Principles*, Commt. 12a, pp. 185-86 (2d ed. 2007).  Metadata includes the contextual, processing, and use information needed to identify and certify the scope, authenticity, and integrity of active or archival electronic information or records.  Id.  Such information can include the file name, file location, file format, file type, file size, creation date, date of last modification, date of last access, date of last metadata modification, and who is allowed to read, write, and run the file.  Id.

Metadata is hidden and not readily visible. Id. at Commt. 12a, p. 185. Therefore, the potential for inadvertent disclosure of confidential or privileged information is present when ESI is produced with metadata intact. Id. at Commt. 6f, p. 126. Metadata is available in a document in its native format; it usually requires an affirmative act of conversion to eliminate metadata. Converting a native document to PDF, for example, scrubs the document of all metadata. Metadata may be crucial in a given case, or it may be completely irrelevant—it depends on the needs of the case. Id. at Commt. 12a, p. 186. That is why the parties (who are in the best position to know the needs of their case) are required, under Rule 26, to determine the format for production of ESI at the inception of a federal case—a step omitted in this case due to the defendants' early Rule 12 motions. Id.

Rule 34 does not specifically address whether metadata must be produced in the usual case. It requires production of ESI in the format specified by the requesting party or, if none is specified, then either its native format "or" any format that is reasonably usable. The Rule contemplates that the responding party may object to the format specified by the requesting party, but gives no guidance as to how the court must resolve such disputes. The PDF format used by the KB Ag defendants in producing its ESI is searchable, so KB Ag argues it is "reasonably usable." Copperhead relies on its original request for metadata and argues KB Ag has not shown special circumstances to avoid producing metadata.

There are two cases addressing production of ESI in native format versus PDF format in this district. In Diesel Machinery, Inc. v. The Manitowoc Crane, Inc., 2011 WL 677458, *1 (D.S.D. Feb. 16, 2011), the parties had met and conferred at the Rule 26(f) conference and agreed on producing ESI in native format. Thereafter, defendant alleged the parties had agreed to defendant producing documents in PDF format in lieu of native format, even though plaintiff's discovery requests had specified production in native format. Id. at *1-2. Defendants produced the documents in PDF format. Id. Plaintiff alleged that the parties agreed to an initial production in PDF format in order to expedite depositions, but that plaintiff never waived its right to eventually receive the same documents in native format. Id. A motion to compel by plaintiff ensued and the district court denied the motion as to production in native format. Id. at *1, 4.

First, the court appeared to resolve the credibility of each parties' version of the discussions regarding production in PDF format. Id. at *2-4. The court noted it was "unlikely [defendant] would have . . . devoted the time and expense to redact and produce to [plaintiff] documents in PDF absent" an agreement that it could satisfy its production obligations by producing ESI in PDF format. Id. at *3. Defendant, the court noted, did both. Id. The court noted that by accepting the PDF documents, plaintiff had "ample opportunity to obtain and review discovery of the information contained" in that ESI. Id.

Finally, the court noted that the main difference between production of ESI in native as opposed to PDF format was the production of metadata. Id.

Plaintiff had not shown a special need for metadata.  Id.  Defendant had, on the other hand, demonstrated that it had already devoted approximately 1,000 hours to its document production, which required extensive redactions, and it would have to spend several thousands of additional dollars to re-produce the same documents in native format.  Id.  Under these circumstances, the court found plaintiff's request for metadata unreasonably cumulative and duplicative.  Id.  The court noted defendant did not object to producing in native format ahead of its actual production of ESI because it believed the parties had mutually agreed that the ESI could be produced in PDF format.  Id.

The Diesel Machinery, Inc. ("DMI") case is not strictly controlling in Copperhead's case.  Here, no Rule 26(f) agreement was entered into between the parties whereas there was such an agreement in the DMI case.  Also, here there was no ostensible agreement between the parties to production of ESI in PDF format—Copperhead and the KB Ag defendants have disagreed from the beginning about the proper format.  In DMI the defendant's failure to object to the format prior to producing ESI was excused because the defendant believed the parties had an agreement to producing ESI in PDF format.

Here, KB Ag did not notify Copperhead of their objections to producing in native format prior to actually producing ESI.[7]  As the advisory committee

---

[7] Prior to producing the ESI and after having received Copperhead's discovery requests, counsel for KB Ag inquired as to why Copperhead needed metadata, and questioned whether Rule 34 was applicable at the procedural stage of the litigation (i.e. before a Rule 26(f) conference was held), but KB Ag never objected to producing documents in native format or to producing the requested "load files" containing metadata.  See Docket No. 44-1.

notes demonstrate, a defendant who does so takes upon itself the risk of having to re-produce the ESI in the proper format. Finally, the defendant in DMI supported its argument about undue burden by telling the court the number of man hours already expended in producing documents in PDF format and the amount of expense it would incur if it were required to re-produce the same ESI in native format. Here, the KB Ag defendants only make generalized allegations of "undue burden."

The other case from this district is Stormo v. City of Sioux Falls, 2016 WL 697116 (D.S.D. Feb. 19, 2016), which the court also finds distinguishable. In that case, the court denied the *pro se* plaintiff's motion to compel metadata because he offered no explanation for why he believed the city might have altered documents produced or why metadata would be relevant to his claims. Id. at *2. The Stormo case involved protracted litigation by a *pro se* plaintiff unaware of the rules of procedure or the law. In a district where civil cases rarely drag on beyond the three-year mark, the Stormo litigation was already in its fourth year at the time the decision cited above was issued. By the time the district court ruled on Mr. Stormo's motion to compel in the above-cited case, there had been nine motions to compel filed, five motions for protective orders, two motions to amend the complaint, two motions for sanctions, a motion for summary judgment and a motion to modify the court's order ruling on the summary judgment motion—and a trial date was not even imminent at this point. This court views in context the Stormo court's order denying Mr. Stormo access to the metadata in the ESI produced by the city because he had not

shown a special need for it. Although that was indisputably the correct decision in that case at that time, it does not necessarily stand for the proposition that metadata is unavailable in this district unless the party seeking it has shown extraordinary circumstances justifying its receipt.

Decisions from other jurisdictions tend to establish the rule that a party must show special need for metadata before being entitled to it. The court in Mitchell v. Reliable Security, LLC, 2016 WL 3093040 *1-2 (N.D. Ga. May 24, 2016), required defendant to produce ESI in native format despite defendant's assertion it would cost it $3,000 more to process and produce the ESI in native format than it would in PDF format. The plaintiff pointed out that emails and Excel spreadsheets relevant to her pregnancy discrimination claim were susceptible to *post hoc* manipulation. Id. at *1. In part, the court ruled as it did because defendant never explained *why* producing ESI in native format would cost more than converting to PDF format. Id. at *2. The court also found the public interest in allowing a civil rights plaintiff to have access to relevant information far outweighed the ostensible $3,000 cost. Id. This case is commercial in nature with relatively well-matched corporations on opposing sides. There is no public interest factor in this case as there would be in a civil rights lawsuit.

The opposite result was reached in Wyeth v. Impax Laboratories, Inc., 248 F.R.D. 169, 171 (D. Del. 2006). The plaintiff was denied access to metadata because local rule established a presumption against receipt of

metadata in ESI and because the plaintiff had not articulated a particularized need for metadata in its motion to compel. Id.

In Davenport v. Charter Communications, LLC, 2015 WL 1286372 at *2-3 (E.D. Mo. Mar. 20, 2015), the plaintiffs failed to designate a format for production of ESI in their discovery requests and defendants produced the ESI in PDF searchable format. Plaintiffs sought metadata only after the ESI was produced, articulating a specific reason in support of the request. Id. The court noted that other courts had routinely found searchable PDF format to be a "reasonably usable form" where the requesting party had not specified some other format. Id. at *3. See also Rahman v. The Smith & Wollensky Restaurant Group, Inc., 2009 WL 773344 at *4 (S.D.N.Y. Mar. 18, 2009) (PDF format is "reasonably usable" where requesting party did not otherwise specify a format).

The Davenport plaintiffs' stated reason for requesting native format was that they wanted to be able to sort and categorize the data; plaintiffs did not dispute the veracity of the data nor did they assert that certain data was cut off or truncated due to the PDF format. Davenport, 2015 WL 1286372 at *3. The court found plaintiffs' stated desire to be able to sort and categorize the data did not constitute "good cause" entitling them to re-production of documents in native format. Id. at **3-4.

In ADT Security Serv., Inc. v. Swenson, 2009 WL 10690407 at *1-2 (D. Minn. July 23, 2009), the court denied a discovery request for emails in their native format with metadata intact. Although the requesting parties

stated they wanted to see the metadata in order to determine if ADT had tampered with the emails, the requesters had no concrete facts upon which to conclude ADT *had* tampered with the ESI. Id. The court refused to require production of metadata based on mere speculation of possible wrongdoing. Id.

Several cases have noted an emerging presumption against requiring the production of metadata. ADT Security Serv., Inc., 2009 WL 10690407 at *2; Wyeth, 248 F.R.D. at 171; Williams v. Sprint/United Mgmt. Co., 230 F.R.D. 640, 645-47 (D. Kan. 2005). Some districts have local rules establishing a presumption against receipt of metadata. See Wyeth, 248 F.R.D. at 171 (noting local D. Del. rule establishing a presumption against receiving metadata without a showing of a particularized need for it). The District of South Dakota does not have a local rule addressing metadata. The Sedona Principles state that requesting parties should not demand production of ESI with metadata if there is no practical use for it or if it does not materially aid in the discovery process. See 19 Sedona Conf. J., The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, p. 173 (3d ed. 2018) (hereinafter "Sedona Third").

Neither side has shown particularly cogent facts in favor of their position. Copperhead has given the court no reason to suspect defendants have made *post hoc* modifications to ESI produced. Defendants have not persuasively shown that it would be unduly burdensome for them to re-produce ESI in native format. It really comes down to which party has the burden to show special circumstances.

Defendants argue, based on <u>Stormo</u>, that the burden is on Copperhead to show persuasive reasons why it should be given metadata. Copperhead argues that metadata is to be produced in the ordinary course unless defendants come forward with persuasive reasons why it should *not* be produced. There is no established presumption in this circuit regarding who has the burden to demonstrate reasons for their position; the importance and need for metadata depends on the needs of each case, whether the requesting party specified a particular format in the discovery requests, and whether there are concrete and specific facts demonstrating a need for metadata.

At this point, the court will not order defendants to re-produce their ESI in native format. **The court *will*, however, order that defendants *preserve* all metadata with regard to their ESI.** Later, if Copperhead can show persuasive reasons and particular facts showing a need for metadata *as to particular production* in this case, it can renew its request with the support of additional facts.

## D.  Individual Discovery Requests

### 1.  Signatures on Interrogatories

Defendants answered interrogatories only on behalf of KB Ag, even though Copperhead directed the interrogatories to all defendants and, by the time KB Ag signed the interrogatories, individual defendants Kimber Mitchell and Brian Robertson had been served and their lawyer had filed a notice of appearance. Copperhead objects to this and asserts the individual defendants should file responses joining in the answers given by KB Ag or should file their

own individual responses to the interrogatories under oath. The court agrees with Copperhead. Defendants are ordered to provided separate answers to these interrogatories signed under oath by each of the three defendants, or to provide responses from the individual defendants joining in the responses of KB Ag.

**2.    Interrogatory Nos. 4 & 6**

In interrogatory no. 4 Copperhead asks defendants to identify in this interrogatory all advertising purchased by you or on your behalf. Interrogatory no. 6 asks defendants to identify any website, software, social media account or other digital platform used to market KB Ag or its products that was identified in interrogatory no. 4.

Defendants responded no advertising was purchased in 2017, but answered the interrogatory in detail with regard to 2018 and 2019. Copperhead asserts the answer is incomplete as defendants should have also identified any advertising purchased by CM Welding or Carolyn Mitchell Estes on behalf of KB Ag. Copperhead asserts if KB Ag used an internal software application to advertise, this information should be provided in response to these interrogatories.

But Copperhead has not given the court any basis to believe such advertising or digital information exists other than what defendant KB Ag has disclosed. The court points out that responses to discovery requests are continuing in nature and defendants are under a duty to supplement their

responses at a later date if information comes to light that would cause them to add, modify or otherwise amend their original answer.

### 3. Interrogatory No. 7

This interrogatory asks defendants to identify any person who has furnished any testimonial or product review related to defendants' answer to interrogatory no. 2. Defendants responded to the interrogatory by stating that there are no such persons. Defendants state that the "blurbs" at the bottom of its website are paraphrases of statements farmers and other clients told KB Ag at trade shows. KB Ag states it did not record the names or dates these various statements were made.

In a supplemental answer, defendants suggest there may be additional information, but that it is not being produced due to the stay of the Indiana state court action and "shop rights." The objection based on the stay is now moot as the Indiana court has lifted the stay. If there is additional information responsive to interrogatory no. 7, defendants are hereby ordered to provide a supplemental response disclosing that information to Copperhead within 30 days. Alternatively, if defendants are claiming privilege, defendants are directed to provide a privilege log in compliance with FED. R. CIV. P. 26(b)(5) within 30 days.

### 4. Interrogatory No. 8

This interrogatory asks defendants to state any transfer, assignment, license, authorization, or other agreement between CM Welding, Inc. and KB Ag or any of their principals related to designs, plans, product specifications,

customer lists, dealer lists, intellectual property, trademarks, trade dress, websites, domain names, software or web applications, or other proprietary information.

Defendants' response is three-fold. First, they interpose an objection that the interrogatory is irrelevant, overly broad and unduly burdensome. Second, they assert the interrogatory requests confidential or otherwise privileged information. Third, defendants refer Copperhead to the Market Affiliate Agreement which was already produced and sets forth "all proprietary information" shared between KB Ag and CM Welding. As to others aside from CM Welding, defendants state "at one point in time, Don Estes provided plans or drawings for the RPR Concave for the purpose of seeing if KB Ag's . . . manufacturer could produce RPR Concaves." For this last answer, defendants refer Copperhead to Kimber Mitchell's deposition testimony for more detail.

Copperhead asserts defendant's objection should be overruled as boilerplate. The court agrees. Defendants have not supported the objection in briefing to the court.

Copperhead asserts the objection on grounds of confidentiality or other privilege fails to identify whether any information has been withheld. The court agrees. The court also notes there is a protective order that has been entered in this case in the event confidential information is requested. See Docket No. 36. Defendants are ordered to immediately file a supplemental response to interrogatory no. 8 indicating whether they have withheld information or not. If they have, defendants must explain why the existing protective order does

28

not provide sufficient protection for the production of the information.  If
defendants are relying on privilege, defendants must file a privilege log
complying with Rule 26(b)(5).

    **5.**      **Interrogatory No. 10**

    This interrogatory asks defendants to describe any monetary or non-
monetary consideration "that KB Ag . . . or its principals have received from or
provided to Carolyn Estes or CM Welding, Inc." from January 1, 2014, to the
present.  Defendants responded with the same objection as to interrogatory no.
8 and the same statement about potential confidential or privileged
information.  This court's response is the same.  The boilerplate objection is
overruled.  If defendants are withholding any information, they must identify
what is being withheld, explain why the protection order already entered is
insufficient, and provide a privilege log pursuant to Rule 26(b)(5) if they are
asserting a privilege.

    Defendants also provided detailed answers explaining monetary
exchanges between Estes/CM Welding and KB Ag for the years 2017 to the
present.  Copperhead objects that no information was provided for the years
2014-16.  Copperhead also objects that defendants have given insufficient
particularity.

    As to particularity, defendants specified exact dates and exact amounts
for the monetary transfers except for Carolyn's payment to KB Ag for the use of
KB's domain name and online advertising.  No dollar figure is attached to this

statement. The court orders defendants to supplement their answer stating how much was paid for these items.

As to the objection that no information was provided for 2014-16, Copperhead's own complaint alleges that KB first came into existence in September, 2017. See Docket No. 1 at p. 4, ¶20. Interrogatory no. 10 asks for information regarding monetary and non-monetary transfers "that KB Ag or its principals have received." KB Ag could not have received any transfers prior to September, 2017, because it did not exist prior to that date. Similarly, because KB Ag did not exist, neither were there any such persons prior to that date who could be identified as "principals of KB Ag." The court will not require defendants to provide non-existent information. If what Copperhead really wanted was information about transfers between Carolyn/CM Welding and the individual defendants prior to September, 2017, it could have asked that question. But, as the court reads interrogatory no. 10, that is not the question that was asked.

### 6. Objections to Requests for the Production of Documents

For many of Copperhead's requests for production (RFP) of documents, defendants asserted objections, but then produced some documents, lending uncertainty as to whether any documents have been withheld. The Rules of Civil Procedure were recently amended to address this particularly common evil.

Rule 34 now reads "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to

part of a request must specify the part and permit inspection of the rest." See
Fed. R. Civ. P. 34(b)(2)(C). Accordingly, the court hereby orders defendants to
provide supplemental responses to each and every RFP to which an objection
was interposed and to state, in compliance with Rule 34(b)(2)(C), whether any
document is being withheld pursuant to the objection. If so, specify what the
particular objection is for that document. If a RFP is objected to on the basis of
confidentiality, defendants must explain why the existing protective order in
this case is insufficient to address any confidentiality concerns. Finally, if any
document is withheld pursuant to a claim of privilege, defendants must file a
privilege log in accordance with Rule 26(b)(5).

### 7. RFP No. 1

Defendants assert boilerplate objections that the RFP is irrelevant, overly
broad and unduly burdensome. The court overrules these objections.
Defendants also object on the basis that the RFP calls for documents covered
by the stay of the Indiana state court action. Defendants assert they are going
to seek a stay of this action. Both of those stays or potential stays have now
been resolved. There is no stay in either action. The court overrules
defendants' objection based on the stays. Defendants should immediately
produce any responsive document to RFP no. 1 that is not privileged.

### 8. RFP Nos. 5, 6 & 9

Defendants interpose the same objections as were interposed with regard
to RFP no. 1. The court similarly overrules those objections with regard to RFP

nos. 5, 6 & 9.  Defendants should immediately produce any responsive document to RFP nos. 5, 6, & 9 that is not privileged.

### 9.    RFP No. 14

Defendants interpose the same objections as were interposed with regard to RFP no. 1.  The court similarly overrules those objections with regard to RFP no. 14.  Defendant also incorporate by reference the objections that were interposed as to RFP no. 12.[8]  In their response to RFP no. 12, defendants assert that other forums (Indiana state court and the USPTO) are exclusive forums for deciding who has the right to the intellectual property at issue herein.  Those are matters for the district court to determine a motion to dismiss or a motion for a change of venue.  They are not objections to discovery.  The district court denied defendants' motion for stay.  No motion for change of venue has been filed.  Accordingly, the court overrules the objection.

### CONCLUSION

Based on the foregoing facts, law and analysis, the court hereby

ORDERS that Copperhead's motion to compel [Docket No. 43] is granted in part and denied in part as described more fully in the body of this opinion.  Defendants shall file any supplemental discovery responses ordered in this opinion within 30 days of this opinion.  Likewise, if defendants are asserting privilege, they must serve a privilege log that complies with FED. R. CIV. P. 26(b)(5) on Copperhead within 30 days.  Finally, to the extent defendants

---

[8] RFP no. 12 is not among the discovery requests which are the subject of Copperhead's motion to compel.

continue to resist any discovery request on the basis of confidentiality, defendants must file a supplemental response within 30 days explaining why the protective order already on file in this case is not sufficient to protect their confidentiality interests.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED December 10, 2019.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge