UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| COPPERHEAD AGRICULTURAL PRODUCTS, LLC, a South Dakota Limited Liability Company, and COPPERHEAD CONCAVE LLC, a South Dakota Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>KB AG CORPORATION, LLC, KIMBER MITCHELL, and BRIAN ROBERTSON,<br><br>Defendants. | CIV. 18-4127<br><br>MEMORDANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |

## INTRODUCTION

On September 27, 2018, Plaintiffs Copperhead Agricultural Products, LLC, and Copperhead Concave LLC (hereinafter referred to as "Copperhead") filed a complaint against Defendants KB Ag Corporation, LLC, Kimber Mitchell, and Brian Robertson (collectively referred to as "Defendants") alleging federal claims of false designation of origin, false association, and cyberpiracy under the Section 43(a) of Lanham Act, 15 U.S.C. § 1125(a), (d), and state law claims of defamation/trade libel; tortious interference; unfair competition; and unjust enrichment, and deceptive trade practices. Doc. 1. This Court has federal question jurisdiction over Copperhead's Lanham Act claims and diversity jurisdiction over Copperhead's state law claims. Copperhead alleges that the amount in controversy is greater than $75,000 that the parties are completely diverse. Doc. 1; *see OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007) ("Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship.").

On September 25, 2019, this Court issued its Memorandum Opinion and Order granting Defendants' Motion for Joinder (Doc. 42); denying Defendants' Motion to Dismiss for Lack of Jurisdiction (Doc. 14); denying Copperhead's motion to set hearing for preliminary injunctive relief (Doc. 23); denying Copperhead's motion for preliminary and declaratory relief (Doc. 26); and denying Defendants' motion to stay (Doc. 66). Doc. 78. Still pending before this Court is

1

Defendants' Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted, Doc. 14, as well as Copperhead's Motion to Compel Discovery, Doc. 43, which has been referred to Magistrate Judge Veronica Duffy. For the following reasons, Defendants' Motion to Dismiss is granted in part and denied in part.

## STANDARD OF REVIEW

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal citations omitted). The complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Id.; Benton v. Merrill Lynch & Co., Inc.*, 524 F.3d 866, 870 (8th Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). "Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id. (citation omitted).*

When considering a motion to dismiss under Rule 12(b)(6), the court generally must ignore materials outside the pleadings, but it may consider "'some materials that are part of the public record or do not contradict the complaint,' as well as materials that are 'necessarily embraced by the pleadings.'" *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted). In general, material embraced by the complaint include "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings." *Ashanti v. City of Goden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012).

## BACKGROUND

For purposes of this motion, the factual allegations of the complaint are assumed true and construed in favor of Copperhead, the plaintiffs in this matter. Don Estes is the patent holder of certain concave technologies that have previously been affiliated with his name, and the patents cover certain concave products that attach to farm machinery such as combines and are used to secure a more efficient harvesting process. Doc. 1, ¶ 10.

In July 2018, Copperhead Concave entered into two agreements with Don Estes, the Exclusive Distribution Agreement and Exclusive License Agreement (collectively referred to as the "Exclusive License and Distribution Agreement"). Doc. 1, ¶ 12. Pursuant to the Exclusive License Agreement, Don Estes granted Copperhead Concave the exclusive right to "make, have made, use, sell, offer for sale, distribute, develop, and create derivative works, improvements, and derivations" from and to the technology any "licensed products". Docs. 20-4; 15-4. "Licensed product" is defined in the Exclusive License Agreement as "any product covered by or produced using information, know how, or concepts contained within or based upon" the patents owned by Don Estes and includes "further development of the licensed product, any packaging, and any products previously sold by or on behalf of the Seller utilizing the information or concepts contained directly or indirectly within [Don Estes's patents]." Docs. 20-4; 15-4. In the Exclusive License Agreement, Don Estes also granted Copperhead Concave the exclusive right and license to use the "licensed marks" in connection with "any making, use, sale, offer for sale, and distribution of any licensed products." Docs. 20-4; 15-4. Licensed marks is defined as "any of the marks of [licensor, Don Estes] under which [Don Estes] offered or sold any [licensed product] prior to the [e]ffective [d]ate" of the License Agreement. Docs. 20-4; 15-4. The Exclusive Distribution Agreement grants Copperhead "the exclusive right and license to use the product marks," defined as "the marks 'RPR Conclave (sic) Patents', including any marks previously used relative to the product except those marks over which [Don] Estes has no control." Docs. 20-5; 15-3.

Copperhead markets and sells products pursuant to the Exclusive License and Distribution Agreement. Doc. 1, ¶ 17. The products are marketed as the Copperhead Concave System and include products that are correlate with Case International Holland combines and John Deere combines. Doc. 1, ¶ 17. On its website, Copperhead describes the Copperhead Concave System as follows: "Copperhead Concave Systems is proud to manufacture the original

3

RPR Combine Concave System that was designed by Donnie Estes from Frankfurt Indiana. His original design includes a notched round bar, increased space between round bars and adjustable/removable cover plates." Doc. 1, ¶ 18. In addition to consideration paid to Don Estes for exclusive licensing and distribution rights, Copperhead has devoted resources to marketing and selling the Copperhead Concave System, including advertising online, attending trade shows, and directly engaging potential customers. Doc. 1, ¶ 19.

In September 2017, defendants Mitchell and Robertson formed Defendant KB Ag Corp, LLC. Doc. 1, ¶ 20. Defendants market and sell a concave product under the label XPR Concave System and the XPR Threshing/Separating Concave System. Doc. 1, ¶ 21. Defendants market and sell products through various commercial channels, including through a website www.estesperformanceconcaves.com. Doc. 1, ¶ 22. In addition, Defendants market their products with the trade-name "Estes Performance Concaves" and their website and other marketing materials refer to Defendants' products as "Estes Concaves." Doc. 1, ¶ 23. Don Estes objects to the use of the "Estes" name by Defendants to market the XPR Concave System. Doc. 1, ¶ 28. Copperhead alleges that the use of the "Estes" name creates the false and misleading impression that its products are manufactured by, authorized by, or otherwise associated with Don Estes and contain, incorporate, or reflect the patents and product designs that are known to be associated with his name, work, and intellectual property. Doc. 1, ¶ 75.

Copperhead attended the DakotaFest Farm Show in Mitchell, South Dakota, which featured agricultural events and activities on August 21-13, 2018. Doc. 1, ¶ 37. During the DakotaFest Farm Show, Defendants approached the Copperhead booth and allegedly "began loudly making defamatory statements about Copperhead, its product line, and the ownership group's affiliation with Don Estes." Doc. 1, ¶ 38. Kimber Mitchell made statements about Copperhead's concave products that Copperhead alleges were both false and disparaging, and could be heard and understood by individual attendees of DakotaFest in and around the Plaintiffs' booth. Doc. 1, ¶¶ 38, 40.

## DISCUSSION

Pending before the Court is Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Therein, Defendants move to dismiss Copperhead's federal Lanham Act claims alleging false designation of origin/false association under 15 U.S.C.

4

§ 1125(a), Copperhead's cyberpiracy claim arising under § 1125(d), as well as Copperhead's state law claims alleging defamation/trade libel, tortious interference, unfair competition, unjust enrichment, and deceptive trade practices. The court will address, in turn, each of Copperhead's claims that are the subject of Defendants' motion to dismiss.

### A. Defamation/Trade Libel

Defamation is either libel or slander. SDCL § 20-11-2. In South Dakota, libel is defined as "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." SDCL § 20-11-3. Slander is defined under South Dakota law as "a false and unprivileged publication," which:

(1) Charges any person with crime, or with having been indicted, convicted, or punished for crime;
(2) Imputes to him the present existence of an infectious, contagious, or loathsome disease;
(3) Tends directly to injury him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit;
(4) Imputes to him impotence or want to chastity; or
(5) By natural consequence, causes actual damage.

SDCL § 20-11-4. A statement is actionable if it implies a false assertion of an objective fact. *Paint Brush Corp. v. Parts Brush Div. v. Neu*, 599 N.W.2d 384, 397 (S.D. 1999) (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18-19 (1990)).

In their complaint, Copperhead alleges that Defendants have made "false oral and written representations about Plaintiffs and their products" to third parties. Doc. 1, ¶ 44. Copperhead alleges that Defendants "impugned, disparaged, and defamed Plaintiffs' products in and through their marketing materials, website testimonials, and other business activities" and that Defendants' "defamatory statements and misrepresentations have occurred in other media as well." Doc. 1, ¶¶ 35, 36. In addition to these more general allegations, Copperhead describes an incident that took place at DakotaFest Farm Show in Mitchell, South Dakota, during which Kimber Mithcell allegedly "made statements about Plaintiffs' concave products that were both

5

false and disparaging" and that such statements could be heard by individuals attendees of DakotaFest in and around the Plaintiffs' trade booth. Defendants allege further that "[t]he subject matter of the false representations would tend to injure Plaintiffs in their occupation."

Because Copperhead fails to set forth the alleged defamatory statements made to third parties at DakotaFest, in marketing materials, website testimonials, and other business activities, the Court concludes that Copperhead fails to state a claim for defamation upon which relief may be granted. *See Freeman v. Bechtel Contr. Co.*, 87 F.3d 1029, 1031 (8th Cir. 1996) (quoting *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 699 (8th Cir. 1979) ("[U]nless the complaints set forth the alleged defamatory statements and identify the persons to whom they were published, [the defendant] is unable 'to form responsive pleadings.'")); *Holliday v. Great Atl. & Pacific Tea Co.*, 256 F.2d 297, 302 (8th Cir. 1958) ("In an action for slander or libel the words alleged to be defamatory must be pleaded and proved."); *Hernandez v. Avera Queen of Peace Hosp.*, 886 N.W.2d 338, 346 (S.D. 2016) (dismissing defamation claim based on allegations that hospital administrator wrote inaccurate, false, and malicious statements to people associated with the hospital because plaintiff failed to "identify an objectively false fact published by [the administrator].").

To the extent that Copperhead alleges that the use by Defendants of the "Estes" name in their advertising is the basis of their defamation claim,[1] the Court finds that this too fails to state a claim upon which relief may be granted. The South Dakota Supreme Court has stated that in order to bring a defamation claim under South Dakota law, "it must appear that the alleged defamatory language refers to some ascertained or ascertainable person and that person must be the plaintiff." *See Brodsky v. Journal Pub. Co.*, 42 N.W.2d 855, 857 (S.D. 1950) ("We recognize that an action may be maintained where the defamed person is not named, but is sufficiently identified by reference in the article to facts and circumstances from which others may understand that such person is referred to."); *see also* Restatement of the Law – Torts § 564, *Applicability of Defamatory Communication to Plaintiff* (updated Oct. 2019) ("It is necessary that the recipient of the defamatory communication understand it as intended to refer to the plaintiff."). The use of the name "Estes" by Defendants in KB Ag's website address and marketing materials to market its own products is not "a false assertion of an objective fact"

---

[1] Copperhead's brief states its complaint alleges that KB Ag uses its marketing materials and website testimonials to create a false impression of affiliation with Estes. Doc. 19 at 14.

6

regarding Copperhead, the plaintiffs in this matter. It might be "a false assertion of an objective fact" regarding Estes, but not Copperhead. Copperhead is not named or sufficiently identified as the entity referred to.

Accordingly, Copperhead's claim for defamation is dismissed for failure to state a claim upon which relief may be granted.

### A. Tortious Interference

Tortious interference with business relationships or expectancies is a cause of action that recognizes that "valid business relationship and expectancies are entitled to protection from unjustified interference." *Hayes v. N. Hills Gen. Hosp.*, 590 N.W.2d 243, 247-48 (S.D. 1999). "One is liable for commission of this tort who interferes with business relations of another, both existing and prospective, by inducing a third person not to enter into or continue a business relation with another or by preventing a third person from continuing a business relation with another." *Id.* at 248 (citation omitted). To establish liability for interference with an expectancy of a business relationship or interference with a business relationship, a plaintiff must prove:

1) There existed a valid expectancy of a business relationship, a valid business relationship or a valid contract;
2) At the time the acts complaint of were committed, defendant knew of this expectancy/business relationship/contract, or should have known of it;
3) The conduct of the defendant was an intentional and unjustified act of interference that was improper;
4) The inference was a legal cause of the harm sustained; and
5) As a result of the defendant's conduct, plaintiff suffered damage.

South Dakota Pattern Jury Instructions 20-190-10 (2018); *see also Case v. Murdock*, 589 N.W.2d 917, 919 (S.D. 1999). To meet the first element, there must be a "valid business relationship or expectancy" with a third party. *Table Steaks v. First Premier Bank, N.A.*, 650 N.W.2d 829, 835 (S.D. 2002) (citing *Landstrom v. Shaver*, 561 N.W.2d 1, 16 (1997)). "[T]here must be a triangle—a plaintiff, an identifiable third party who wished to deal with the plaintiff, and the defendant who interfered with the plaintiff and the third party." *Landstrom*, 561 N.W.2d at 16.

In the present case, Copperhead alleges that Defendants "have intentionally and improperly interfered with Plaintiffs' contractual relationship with Don Estes and have

7

knowingly and intentionally misappropriated the Estes name and reputation to market their products in a manner that violates and impinges upon Plaintiffs' exclusive license and distribution rights." Doc. 1, ¶ 51. Defendants contend that this claim must be dismissed for failure to state a claim upon which relief may be granted because nothing in the Exclusive License and Distribution Agreement grants Copperhead the rights to Don Estes's surname or the goodwill associated with his name. *See* Doc. 17 at 7. In response, Copperhead argues that it contractually has rights to use the Estes name due to the provision in the Distribution Agreement giving Copperhead the exclusive right to distribute any equipment or devices manufactured for sale incorporating Don Estes's patented technology using "any mark or name under which any PRODUCT is manufactured and labeled by ESTES, including, without limitation, the marks 'RPR CONCLAVE (sic) PATENTS,' including any marks previously used relative to the PRODUCT except those MARKS over which Estes has no control." Doc. 19 at 16; 20-5; 15-3. Copperhead argues that Don Estes intended that his name and goodwill would be associated with Copperhead's products and that Defendants' conduct "has wrongfully interfered with his ability to make good on that promise." Doc. 19 at 16.

The Exclusive Distribution Agreement purportedly gives Copperhead the exclusive right to distribute products using the "RPR Conclave (sic) Patents" mark and any other marks previously used relative to the product with the exception of those marks over which Don Estes has no control. The Exclusive License and Distribution Agreement does not specifically grant Copperhead the rights to the "Estes" mark and neither the agreements nor the complaint allege that Don Estes is has the common law rights to, and thus controls, the "Estes" mark. The complaint fails to allege that the "Estes" marks were used in commerce to identify any products manufactured and labeled by Don Estes or even that Don Estes owns such marks. *See B&B Hardware, Inc. v. Hargis Indus., Inc.*, 569 F.3d 383, 389 (8th Cir. 2009) (stating that a plaintiff may demonstrate that a mark has acquired secondary meaning "by showing that through 'long and exclusive use in the sale of the user's goods, the mark has become so associated in the public mind with such goods that the mark serves to identify the source of the goods and distinguish them from those of others."). In addition, the Exclusive License and Distribution does not grant Copperhead the rights to the "Estes" name and goodwill associated with that name. Thus, any infringement on the goodwill and publicity rights associated with the "Estes" name does not interference with Copperhead's and Don Estes's contract.

Instead, the complaint merely alleges that "Don Estes is the patent holder of certain concave technologies that have previously been affiliated with his name" and that "[t]he Exclusive Licensing Agreement grants Copperhead Concave exclusive rights to certain patents and intellectual property developed and owned by [Don] Estes, along with exclusive rights to sell products that incorporated or derived from such patents and intellectual property." Doc. 1, ¶¶ 10, 13. As this Court stated in its September 25, 2019, memorandum opinion and order, § 43(a) of the Lanham Act protects marks that serve to identify the producer of a tangible products sold in the marketplace, not the person or entity that originated the ideas that the goods embody or contain. Doc. 78 at 37 (citing *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31-32 (2003)). Accordingly, the Court concludes that Plaintiffs have failed to allege facts sufficient to support a claim that Defendants' use of the "Estes" marks improperly interfered[2] with Plaintiffs' contractual relationship with Don Estes. The Court does not find that the Exclusive License and Distribution Agreement grants Copperhead the right to the "Estes" marks and even if it did, neither the agreements nor the complaint state or allege that Don Estes is the owner of such mark or any facts to support such a conclusion.

Copperhead also alleges that Defendants "have intentionally and improperly interfered with Plaintiffs' economic relationships with its customers." Doc. 1, ¶ 52. Specifically, Copperhead alleges that "Defendants have used false and misleading advertising and other unjustified means in seeking to solicit, gain access to, or obtain leverage with customers in the market for agricultural component products . . . and with customers with whom Plaintiffs have a pre-existing relationship." Doc. 1, ¶¶ 53, 55. In response, Defendants contend that because Copperhead entered the concave market approximately two months prior to filing this lawsuit, "[i]t would be implausible that Copperhead would suffer interference with business expectancies where Copperhead had not established a customer relationship with combine concave buyers during that timeframe." Doc. 17 at 8. Citing language from *Hayes v. N. Hills Gen. Hosp.*, 590 N.W.2d 243, 250 (S.D. 1999), Defendants state that "[a] new or planned business will not be able to maintain this cause of action as it will have nothing to base its damages." Furthermore, Defendants contend that any business expectancy or customer relationship that existed at the

---

[2] The Court acknowledges that typically what constitutes improper interference is generally a factual question. *See Gruhlke v. Sioux Empire Fed. Credit* Union, 756 N.W.2sd 399, 408 (S.D. 2008). However, the Court finds that the facts alleged in the Complaint regarding this claim, accepted as true, do not even give rise to an inference of improper interference with the contract.

9

time Copperhead and Don Estes executed their Exclusive License and Distribution Agreement belonged to CM Welding which had previously sold Estes Performance Concaves prior to Don Estes's departure from the company. Doc. 17 at 8.

Copperhead alleges that Defendants interfered with Copperhead's relationships with its pre-existing customers and also with its "customers," which this Court interprets as being prospective customers. The Court concludes that Copperhead has sufficiently alleged a business expectancy or relationship with an "identifiable third party" which has been defined by the South Dakota Supreme Court as a third party "subject to identification" or "capable of being identified." *Hayes*, 590 N.W.2d at 249 (citing Webster's Third New International Dictionary 1123 (1971)). "If the parties or class are 'identifiable' then the plaintiff has met his burden on that element." *Id.* at 250. "The standard of proof for "identifiable' parties at the subsequent trial stage is using these identifiable parties or class to create a nexus between those third parties and the defendants' acts. This nexus must be that it is 'reasonably probable that . . . prospective economic advantage would have been realized but for the [defendants' conduct]." *Id.* The Court acknowledges that unlike in *Hayes*, there may be questions of fact regarding whether Copperhead has a "background of business experience on the basis of which it is possible to estimate with some fair amount of success both the value of what has been lost and the likelihood that the plaintiff would have received it if the defendant had not [allegedly] interfered." *See id.* However, whether Copperhead will be able to establish the requisite "nexus" based upon the "totality of the circumstances" is a factual question that is not pertinent to this Court's determination of whether or not Copperhead has stated a claim upon which relief may be granted.

### A. Unfair Competition

The tort of unfair competition does not have specific elements. *Setliff v. Setliff*, 616 N.W.2d 878, 887 (S.D. 2000). Instead, "it describes a general category of torts which courts recognize for the protection of commercial interests." *Id.* Tortious interference can be the basis for a claim for unfair competition. *See id.* at 888 (citing *United Wild Rice, Inc. v. Nelson*, 313 N.W.2d 628, 631 (Minn. 1983)). Because Copperhead's claim for tortious interference with business expectancy survives Defendant's motion to dismiss, it may serve as the basis for Copperhead's unfair competition claim.

### B. Unjust Enrichment

"Unjust enrichment occurs 'when one confers a benefit upon another who accepts or acquiesces in that benefit, making it inequitable to retain that benefit without paying.'" *Hofedt v. Mehling*, 658 N.W.2d 783, 788 (S.D. 2003) (citation omitted). In order to state a claim for unjust enrichment Copperhead must show that (1) Defendants received a benefit from Copperhead; (2) that Defendants were aware they were receiving a benefit from Copperhead; and (3) that it is inequitable to allow Defendants to retain this benefit without paying for it. *See id.*

In their complaint, Copperhead alleges that Defendants "have received monetary benefits as a result of the unlawful misconduct described herein and have been unjustly enriched thereby," and that "Plaintiff has suffered, and will continue to suffer, harm that results from Defendants' misconduct . . . ." Doc. 1, ¶¶ 63-66.

The Court agrees with Defendants and finds that nowhere in the complaint does Copperhead allege that Defendants were unjustly enriched *by a benefit conferred to them by Copperhead*. Because Copperhead has not alleged that it conferred a benefit upon Defendants, the Court concludes that it has failed to state a claim of unjust enrichment upon which relief may be granted.

### C. Deceptive Trade Practices Act

Copperhead has pleaded a cause of action under South Dakota's Deceptive Trade Practices Act. South Dakota Codified Law § 37-24-6 provides:

It is a deceptive act or practice for any person to:

(1)　Knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby.

"Person" under the Act includes "a natural person or his legal representative, a partnership, a limited liability company (domestic or foreign), a corporation (domestic or foreign), a trust, an incorporated or unincorporated association, and any other legal entity." *Moss v. Guttormson*, 551 N.W.2d 14, 17 (S.D. 1996) (citing SDCL § 37-24-1(8)).

Copperhead alleges that Defendants' "unlawful and unauthorized misappropriation of the 'Estes' name, and other misconduct described [elsewhere in the complaint]" is the basis of Copperhead's Deceptive Trade Practices Act claim. Defendants argue that Copperhead has failed to state a claim under the Deceptive Trade Practices Act because it has failed to allege that it relied, to its detriment, on any misrepresentations that the Copperhead Concave System was endorsed, sponsored, or otherwise affiliated with Don Estes. Defendants argue that Copperhead's claim that it was damaged by customers or potential customer's reliance on Defendants' alleged misrepresentations fails to state a claim upon which relief may be granted. In support of its argument, Defendants cite to this Court's opinion in *Rainbow Play Systems, Inc. v. Backyard Adventure, Inc.*, Civ. No. 06-4116, 2009 WL 3150984 (D.S.D. Sept. 28, 2009). There, plaintiff Rainbow Play Systems brought a lawsuit against defendant Backyard Adventure alleging, in part, that Backyard Adventures engaged in deceptive trade practices when it falsely advertised its competing children's play set as being made of cedar. *Id.* at *3-4. This Court granted summary judgment in favor of Backyard Adventures on plaintiff's deceptive trade practices claim because it found no evidence that Rainbow Play Systems relied on the representations by the defendants that their play set was made out of cedar. *Id.* at *7.

In *Rainbow Play Systems, Inc.*, the Court cited to *Nygaard v. Valley Hospitals & Health System*, a case which involved patients bringing a claim for deceptive trade practices against defendants for allegedly misrepresenting their willingness to provide free or reduced cost care based on a patient's ability to pay. 731 N.W.2d 184, 197-98 (S.D. 2007). In *Nygaard*, the South Dakota Supreme Court affirmed the lower court's decision granting the defendant's motion to dismiss the deceptive trade practices claim on the basis that plaintiffs failed to allege that they relied on the alleged misrepresentations in selecting the defendants' hospitals for their care. *Id.* at 198.

Just recently, however, the Eighth Circuit Court of Appeals upheld a jury verdict in favor of a plaintiff alleging a deceptive trade practices claim arising under South Dakota law because it concluded that a jury could infer that the plaintiff lost sales to its competitor defendant because of a *customer's reliance* on defendants' misrepresentation. *See Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.*, 908 F.3d 313, 314 (8th Cir. 2018). The court stated that under South Dakota law, to prove a deceptive trade practices claim, a plaintiff must establish that it

suffered "damages proximately caused by [a defendant's] deceptive practices in connection with the sale or advertisement of merchandise." *Id.* at 341 (quoting *Sisney v. Best Inc.*, 754 N.W.2d 804, 811 (S.D. 2008)). The court concluded that if the customer was deceived by defendant's misrepresentations into thinking that the defendant's products were plaintiff's products, "the jury could infer that [the plaintiff] lost sales to [the defendant]" as a result. *Id.* Thus, the court made clear in *Sturgis Motorcycle Rally, Inc.* that a plaintiff could state a claim under South Dakota's deceptive trade practices act based on damages caused by a *customer's reliance* on a defendant competitors' deceptive trade practices.

Because Copperhead alleges that its previous and potential customers were deceived by their reliance on Defendants' alleged deceptive trade practices to purchase Defendants' XPR concaves, the Court concludes that Copperhead has stated a claim for relief under South Dakota's deceptive trade practices act. The Court also declines to dismiss this claim based on Defendants' argument that any confusion among consumers in the marketplace cannot be a cause of any deceptive trade practices engaged in by Defendants. Doc. 17 at 11. Defendants argue that the record shows that the marks "Estes Concaves" and "Estes Performance Concaves" were registered by Brian Robertson and in use prior to Copperhead commencing sales of concaves. Doc. 17 at 11. The Court concludes, however, that whether or not Defendants' allegedly deceptive trade practices were the cause of Copperhead's damages is a factual question that the Court may not address in evaluating whether Copperhead has stated a claim for relief.

Defendants' motion to dismiss Copperhead's Deceptive Trade Practices Act claim is denied.

### A. Count VI – Unfair Competition, False Association, and False Designation of Origin under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

The Court discussed Copperhead's Lanham Act claims at length in its memorandum opinion and order denying Plaintiff's motion for preliminary injunctive and declaratory relief. Doc. 78. In its complaint, Copperhead alleges that Don Estes "has become a well-known indicator of quality and innovative technology in the relevant agricultural product marketplace, and has acquired substantial secondary meaning therein." Doc. 1, ¶ 77. Copperhead alleges that Defendants' "unfair and unauthorized use of 'Estes Performance Concaves' and 'Estes Concaves' has caused and is likely to cause consumer confusion as to the origin, sponsorship, or

affiliation of [its] products, at least by creating the false and misleading impression that their products are manufactured by, authorized by, or otherwise associated with [Don Estes] and contain, incorporate, or reflect the patents and product designs that are known to be associated with his name, work, and intellectual property." Doc. 1, ¶ 75. Copperhead further alleges that it "ha[s] paid, and will continue to pay, consideration to Mr. Estes for the exclusive rights to license and distribute his patents and to market its products accordingly" and that Defendants have wrongfully "usurped the good will and reputation that constitute part of the consideration underlying Plaintiffs' contractual relationship with [Don] Estes." Doc. 1, ¶ 76, 79.

"False endorsement occurs when a person's identity is connected with a product or service in such a way that consumers are likely to be misled about that person's sponsorship or approval of the product or service." *Stayart v. Yahoo! Inc.*, 651 F.Supp.2d 873, 880 (E.D. Wis. 2009) (citing *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 925-26 (6th Cir. 2003)); *see also Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 204 (3d Cir. 1979).

The Eighth Circuit Court of Appeals has characterized a false endorsement claim under § 43(a)(1)(A) of the Lanham Act, as "false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive[3] mark, name, trade dress, or other device." *White Hall Pharmacy LLC d/b/a/ Doctor's Orders d/b/a/ Doctor's Orders Pharmacy v. Doctor's Orders RX Inc.*, Civ. No. 19-0366, 2019 WL 3939357, at *20 (E.D. Ark. Aug. 20, 2019) (quoting *Dryer v. Nat'l Football League*, 814 F.3d 938, 944 (8th Cir. 2016), *appeal docketed*, No. 19-2840 (8th Cir. Aug. 27, 2019)). In order to prove a false endorsement claim under § 43(a)(1)(A) of the Lanham Act, "a plaintiff must provide evidence that the challenged statements are either 'literally false as a factual matter' or 'literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or [are] likely to deceive consumers.'" *Id.* (quoting *Dryer*, 914 F.3d at 944 (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998))).

---

[3] The Court notes that § 43(a)(1)(A) does not explicitly require the "word, terms, name, symbol, or device" to be "distinctive," but "courts have universally imposed the requirement, since without distinctiveness the [mark] would not cause 'confusion . . . as to the origin, sponsorship, or approval of [the] goods,' as the section requires." *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 211 (2000).

Defendants argue that the plain language of the Exclusive License and Distribution Agreement "fail[s] to assign any rights in the Estes name." Doc. 17 at 12. This Court agrees and accordingly concludes that Copperhead lacks standing to bring a claim for false endorsement based on the alleged wrongful use of Don Estes's last name to market its concave product. As noted by the Court in its memorandum opinion and order dated September 25, 2019, Copperhead has cited to no case, nor was the Court able to find one, that has allowed a third-party such as Copperhead, who is not in privity with the purported endorser (Don Estes in this case), to bring a false endorsement claim under the Lanham Act on the endorser's behalf. Doc. 78 at 41. For this reason, and as further explained in the Court's September 25, 2019, memorandum opinion and order, Defendants' motion to dismiss Count IV of Copperhead's complaint alleging unfair competition, false association, and false designation of origin[4] under the Lanham Act is granted for lack of standing.

### B. Count VII – Cyberpiracy in Violation of 15 U.S.C. § 1125(d)

"Congress enacted the [Anticybersquatting Consumer Protection Act ("ACPA")] to provide legal clarity for trademark owners by prohibiting bad faith and abusive registration of distinctive marks as Internet domain names with the intent to profit from their goodwill." *Coca-Cola Co. v. Purdy*, 382 F.3d 774, 778 (8th Cir. 2004). The ACPA, which amended the Lanham Act, states:

> A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—
>
> (i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and
> (ii) registers, traffics in, or uses a domain name that—
>     (I)    in the case of mark that is distinctive at the time of the registration of the domain name, is identical or confusingly similar to that mark;

15 U.S.C. § 1125(d)(1)(A). The ACPA requires that a plaintiff plead and prove ownership of a valid trademark in order to state a claim. *See Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d

---

[4] In its September 25, 2019, opinion, the Court stated that "[t]o the extent that Copperhead argues that Don Estes is considered the "origin" of" the RPR/Estes Concaves, such argument is foreclosed by the Supreme Court's opinion in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003). Doc. 78 at 36-37. In *Dastar*, the Supreme Court made clear that the Lanham Act protects marks that serve to identify the producer of tangible products sold in the marketplace, not the person or entity, such as Don Estes in this case, that originated the patented technology that the goods embody or contain. *See Dastar*, 539 U.S. at 32-32.

535, 549 (4th Cir. 2004), *abrogated on other grounds by Verisign, Inc. v. XYZ.com, LLC*, 891 F.3d 481, 488 (4th Cir. 2018) (concluding that one "cannot state a claim under the ACPA without a valid trademark").

Registration provides prima facie evidence of ownership, *see* 15 U.S.C. § 1115(a) and *First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th Cir. 1996), but a trademark need not be federally registered in order to qualify for protection under the ACPA, *Int'l Bancorp, LLC v. Societe des Bains de Mer*, 329 F.3d 359, 363 (4th Cir. 2003). *See also Thompson v. Does 1-5*, 376 F.Supp.3d 1322, 1326 (N.D. Ga. 2019) (concluding that the ACPA is to be applied consistently with traditional principles of trademark law). In order to have a protectible interest in an unregistered trademark, the mark must: 1) be used on commerce, *see* 15 U.S.C. § 1051; *see also Matal v. Tam*, 137 S.Ct. 1744, 1752 (2017) (citing to 15 U.S.C. § 1091(a) which provides that marks "'capable of distinguishing [an] applicant's goods or services and not registrable on the principal register . . . which are in *lawful use in commerce by the owner* thereof' may instead be placed on the supplemental register"), and 2) must be distinctive," *Int'l Bancorp, LLC*, 329 F.3d at 363 (emphasis added).

Copperhead alleges that the "Estes" name acquired distinctiveness (i.e. secondary meaning), because the name distinguishes certain concave technologies and patents previously affiliated with the "Estes" name, Doc. 1, ¶¶ 10, 78. The Court acknowledges that typically, whether a mark has acquired distinctiveness is a question of fact. *See WSM, Inc. v. Hilton*, 724 F.2d 1320, 1326 (8th Cir. 1984) (stating that whether a mark is generic, descriptive, suggestive, arbitrary or fanciful is generally a factual issue). However, as stated by the Court in its September 24, 2019, memorandum opinion and order, "[f]ederal trademark law has no necessary relation to invention or discovery, but rather, [] prevent[s] competitors from copying a source-identifying mark." Doc. 78 at 37 (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003)). A "trademark" is defined as a mark used "to identify and distinguish [a person's] goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Because Copperhead fails to allege that the "Estes" name was used to distinguish goods manufactured or sold by Don Estes, but rather alleges that Don Estes is the patent-holder of certain concave technologies that have been previously associated with his name, the Court concludes that

Copperhead has failed to allege facts showing that it is entitled to relief. The Court is not bound to accept Copperhead's label and conclusion that the "Estes" name has acquired secondary meaning in the marketplace when the facts alleged do not support such a conclusion. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that a plaintiff's obligation to provide the "grounds" of his 'entitle[ment] to relief' requires more than labels and conclusions).

Even if Copperhead had adequately alleged that the "Estes" name acquired distinctiveness in the market, Copperhead fails to allege either that it is the owner of the "Estes" marks or that it uses the mark in commerce. Copperhead alleges that the Exclusive License Agreement grants it the exclusive rights to certain patents and intellectual property developed and owned by Estes, along with exclusive rights to sell products that incorporated or derived from such patents and intellectual property." Doc. 1, ¶ 13. However, nowhere in the complaint does Copperhead allege that it acquired rights to the "Estes" marks. While the Exclusive Distribution Agreement grants Copperhead the right to distribute any product using the marks "RPR Conclave (sic) Patents," and "any marks previously used relative to the product except those marks over which [Don] Estes has no control," it does not specifically grant Copperhead the right to the "Estes" marks. Additionally, neither the agreements nor the complaint state facts to support a finding that Don Estes owned and thus controlled the common law rights to the "Estes" marks. As stated above, even if the Court was to accept as true that the "Estes" name distinguishes certain technologies and patents previously developed by Don Estes, such facts do not render that name protectible as a trademark under federal trademark law because they do not serve to distinguish the manufacturer or producer of a good, but only the creator/inventor of such technology.

Finally, the Court finds that Copperhead fails to allege that it uses such mark in commerce "to identify the source of [its] goods and to distinguish them from those of others." *See B&B Hardware, Inc. v. Hargis Industries, Inc.*, 569 F.3d 383 (8th Cir. 2009). In fact, in its complaint, Copperhead alleges that it sells its concave system under an entirely different mark, Copperhead Concaves Systems. Doc. 1, ¶ 17.

For the foregoing reasons, the Court concludes that Copperhead has failed to allege that it is the owner of the "Estes" mark and that such mark is entitled to protection under federal law. As a result, Defendants' motion to dismiss Copperhead's cyberpiracy claim is granted.

Accordingly, it is hereby ORDERED that Defendants' Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Doc. 14, is GRANTED IN PART AND DENIED IN PART as follows:

1) Defendants' motion to dismiss Count I of the complaint alleging defamation/trade libel is GRANTED. Count I is dismissed without prejudice; and

2) Defendants' motion to dismiss Count II of the complaint alleging tortious interference is GRANTED IN PART AND DENIED IN PART; Copperhead may proceed on its claim alleging tortious interference with business expectancy with Defendants' customers and prospective customers, but Copperhead's claim alleging tortious interference with the Exclusive License and Distribution Agreement is dismissed without prejudice; and

3) Defendants' motion to dismiss Count III of the complaint alleging unfair competition is DENIED; and

4) Defendants' motion to dismiss Count IV of the complaint alleging unjust enrichment is GRANTED; and

5) Defendants' motion to dismiss Count V of the complaint alleging deceptive trade practices is DENIED; and

6) Defendants' motion to dismiss Count VI of the complaint alleging false association and false designation of origin under 15 U.S.C. § 1125(a) is GRANTED. Count VI is dismissed without prejudice; and

7) Defendants' motion to dismiss Count VII of the complaint alleging cyberpiracy in violation of 15 U.S.C. § 1125(d) is GRANTED. Count VII is dismissed without prejudice.

Dated this 20th day of December, 2019.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
MATTHEW W. THELEN, CLERK